FILED
United States Court of Appeals
Tenth Circuit

July 15, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES NELSON; ELIZABETH
VARNEY,

      Plaintiffs - Appellees,

v.

UNITED STATES OF AMERICA,

      Defendant - Appellant.

No. 20-1267

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:11-CV-02953-DDD-CBS)**

---

Edward Himmelfarb, Appellate Staff (Jeffrey Bossert Clark, Acting Assistant
Attorney General, Jason R. Dunn, United States Attorney, Charles W.
Scarborough, Appellate Staff, and Brian M. Boynton, Acting Assistant Attorney
General, with him on the briefs), United States Department of Justice, Civil
Division, Washington, D.C., for Appellant.

D. Dean Batchelder (David P. Hersh with him on the brief) Burg Simpson
Eldredge Hersh & Jardine, P.C., Englewood, Colorado for Appellees.

---

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **MCHUGH**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

Mr. James Nelson was seriously injured while riding his bicycle on a trail on Air Force Academy property in Colorado. He and his wife, Ms. Elizabeth Varney, sued the United States under the Federal Tort Claims Act ("FTCA"). Mr. Nelson sought damages for his personal injuries; Ms. Varney sought damages for loss of consortium. After several years of litigation—including two prior appeals to this court—the district court ruled that the government was liable for Mr. Nelson's accident and injuries. The court based its decision on the Colorado Recreational Use Statute ("CRUS"). The court awarded Mr. Nelson more than $6.9 million, and it awarded Ms. Varney more than $400,000.

In addition to the damages awards, the district court also ordered the government to pay Mr. Nelson's and Ms. Varney's attorney's fees. CRUS contains an attorney's-fees-shifting provision, allowing prevailing plaintiffs to recover their fees against defendant landowners. Providing an exception to the United States's sovereign immunity, a federal statute—the Equal Access to Justice Act ("EAJA")—provides that "[t]he United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b). The district court concluded that CRUS qualifies as "*any statute* which specifically provides for [an attorney's fees] award," and, consequently, that the government must pay for Mr. Nelson's and

2

Ms. Varney's fees. Aplt.'s App. at 101, 106 (Order, dated Mar. 22, 2018) (quoting 28 U.S.C. § 2412(b)).

The chief issue presented in this appeal is whether the district court erred in ordering the government to pay the attorney's fees after holding that CRUS qualifies under the EAJA as "any statute which specifically provides for" an attorney's fees award. 28 U.S.C. § 2412(b). We conclude that the court did not err. Therefore, exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Mr. Nelson was riding his bicycle one day on a trail on property owned by the Air Force Academy. He ran into a sinkhole and was seriously injured. In November 2011, he and Ms. Varney sued the United States under the FTCA. The district court conducted bifurcated trials for liability and damages. In the first trial, the district court found that the United States was liable for Mr. Nelson's injuries. *See Nelson v. United States* (*Nelson I*), 20 F. Supp. 3d 1108, 1139 (D. Colo. 2014), *rev'd*, 827 F.3d 927 (10th Cir. 2016). The court based its decision on a Colorado state statute other than CRUS, reasoning that CRUS did not apply because the Air Force Academy had not intended for the trail to be used for recreational purposes. *Id.* at 1135. After the second trial concerning damages, the court awarded Mr. Nelson more than $6.9 million in damages for his personal injuries. It also awarded Ms. Varney more than $400,000 for loss of consortium.

3

The United States appealed.  It argued that the district court should have looked to CRUS to determine whether it was liable for Mr. Nelson's injuries.  And it argued that CRUS barred Mr. Nelson's claim because it generally limits the civil liability of a landowner who "either directly or indirectly invites or permits, without charge, any person to use such property for recreational purposes."  Colo. Rev. Stat. Ann. § 33-41-103(1).  We agreed that CRUS applied, and we thus reversed the district court's decision.  *See Nelson v. United States* (*Nelson II*), 827 F.3d 927, 929 (10th Cir. 2016).  Yet we remanded the case to the district court to determine in the first instance whether the government was liable for Mr. Nelson's injuries under CRUS due to the Air Force Academy's "willful or malicious failure to guard or warn against a known dangerous condition, use, structure, or activity likely to cause harm."  Colo. Rev. Stat. Ann. § 33-41-104(1)(a).

On remand, the district court found that the Air Force Academy had willfully failed to warn against the dangerous sinkhole, rendering the government liable under CRUS.  *See Nelson v. United States* (*Nelson III*), 256 F. Supp. 3d 1136, 1168 (D. Colo. 2017).  It therefore reinstated its original damages award.  CRUS has a seemingly mandatory fee-shifting provision.  It provides that the "prevailing party in any civil action by a recreational user for damages against a landowner who allows the use of the landowner's property for public recreational purposes *shall* recover the costs of the action together with reasonable attorney

4

fees as determined by the court." Colo. Rev. Stat. Ann. § 33-41-105.5 (emphasis added). Pursuant to this provision, the district court further awarded Mr. Nelson and Ms. Varney their attorney's fees. *See Nelson III*, 256 F. Supp. 3d at 1169.

At this point, the government filed a motion to amend the judgment to remove the attorney's fees award. *See* Aplt.'s App. at 25–34 (Mot. for Relief from Order Awarding Atty's Fees, filed July 6, 2017). The government also simultaneously appealed the district court's CRUS-based liability judgment. We eventually affirmed the district court's decision that the government was liable under CRUS. *See Nelson v. United States* (*Nelson IV*), 915 F.3d 1243, 1246 (10th Cir. 2019).

As the government's appeal of the liability judgment was pending, the dispute over the attorney's fees lingered on in the district court. Eventually, in March 2018, the district court denied the government's motion to amend the judgment to remove the attorney's fees award. The court noted that the fee issue centered on whether CRUS qualified as "any statute which specifically provides for [an attorney's fees] award." *See* Aplt.'s App. at 93–94 (quoting 28 U.S.C. § 2412(b)). The government argued that § 2412(b) applied only to *federal* statutes. Yet the court concluded "from the literal language of the statute that the expansive reference, with no limitation, to 'any statute' in § 2412(b) encompasses *all* statutes, i.e., both federal and state statutes that award attorney fees to the prevailing parties." *Id.* at 97. The court found the plain language of § 2412(b) so

5

unambiguous that it was "both unnecessary and improper to resort to legislative history." *Id.* at 103. As a result, the court concluded that the government was liable for attorney's fees as provided in CRUS.

In August 2019, after we had affirmed the liability judgment, the district court appointed a special master to determine the proper amount of attorney's fees. *See id.* at 109–115 (Order Appointing Special Master, dated Aug. 14, 2019). The special master recommended a fee award of slightly more than $1.8 million. *See id.* at 125 (Special Master's Recommendation, filed Apr. 29, 2020). The government did not file an objection to this recommendation. And, in a May 2020 order, the district court adopted the recommendation. *See id.* at 126–28 (Order Adopting Special Master's Recommendation, dated May 27, 2020). The government then timely filed the present appeal.

## II

This appeal presents two issues. The first issue is whether the government waived its objection to the attorney's fees award by failing to object to the special master's recommended fee amount. The second—and chief—issue is whether the district court erred in finding that CRUS qualifies under § 2412(b) of the EAJA as "any statute which specifically provides for" an attorney's fee award, and thus in ordering the government to pay Mr. Nelson's and Ms. Varney's attorney's fees. We shall address each issue in turn.

**A**

We begin with whether the government has waived its objection to the attorney's fees award. This issue was first raised at our court's behest by our Clerk's Office. In an August 2020 order, the Clerk directed the parties to address in their briefs whether the firm waiver rule applies when a party fails to object to a special master's recommendation—as it would when a party fails to object to a magistrate judge's findings or recommendations.

In response, Mr. Nelson and Ms. Varney argue that because the government "fail[ed] to object to the special master's recommendation" of a fee amount, the government waived its present challenge to the attorney's fees award. Aplees.' Br. at 15. Mr. Nelson and Ms. Varney emphasize that the government "agreed to and recommended to the court that a special master be appointed to determine the amount of attorney's fees," and then subsequently "agreed to and participated in this [special master] process." *Id.* at 13. They admit that the government "had opposed the district court's award of attorney's fees" in a motion filed in the immediate wake of the district court's order granting this award. *Id.* at 14. Yet Mr. Nelson and Ms. Varney nonetheless contend that we should not entertain the government's objection to the attorney's fees award because the government "suggested that the district court appoint a special master, participated in proceedings before her, and then filed no object to her recommendation." *Id.*

7

The government, in turn, does "not take a position" on whether the firm waiver rule applies to a special master's recommendation—because it insists that it is *not* actually challenging the special master's recommendation. Aplt.'s Opening Br. at 13. Instead, the government contends that it was challenging "the district court's pre-existing legal conclusion that it has statutory authority to award attorney's fees," pursuant to CRUS. *Id.* In that way, the government claims that "[o]nly the pre-existing legal issue of the *authority to award* fees is part of this appeal, not the *amount* of fees" actually recommended by the special master and adopted by the district court. Aplt.'s Reply Br. at 4 (first emphasis added). And because "there is no dispute that the United States objected to the district court's legal ruling that section 2412(b) permits a fee award to [Mr. Nelson and Ms. Varney], a matter that the special master had nothing to do with," the government argues that it properly preserved its challenge to the fee award. *Id.*

Moreover, the government insists that it was unable to immediately appeal from the district court's March 2018 order awarding attorney's fees "because the court did not determine the amount of fees to be awarded." Aplt.'s Opening Br. at 13. That is, the government claims that its challenge to the fee award became appealable as a final decision only after the district court adopted the final fee award amount recommended by the special master.

8

We agree with the government. It properly preserved its present objection to the attorney's fees award.

It is certainly true that "the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). And, in light of the statutory-authority question at the heart of this appeal, it is noteworthy that "[a] magistrate judge's lack of statutory authority is not a jurisdictional defect; thus, objection to such authority is waived if not timely raised." *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995); *see also Clark v. Poulton*, 963 F.2d 1361, 1366 (10th Cir. 1992) (holding that because the appellant "made no objection to the referral to the magistrate judge," he "waived" any argument "that there was no statutory authorization for the referral").

But we have never expressly applied this firm waiver rule in the context of a failure to object at all or a failure to timely object to a special master's recommendation. Yet it is clear to us that, even if the rule did apply here, as it does for a magistrate judge's recommendation, the rule still would not foreclose the government's present challenge to the attorney's fees award. That is because the government's objection—both before the district court and here—has *not* been to the precise amount of fees recommended by the special master. Nor has the government claimed that the special master's recommendation somehow exceeded

9

its statutory authority under 28 U.S.C. § 636 or Federal Rule of Civil Procedure 53. Instead, the government's objection has been to an action that preceded the special master's recommendation—that is, the district court's award of attorney's fees itself. In a nutshell, the government has maintained that the court lacked statutory authority to make this award.

For that reason, then, our caselaw on omitted or untimely objections to a magistrate judge's recommendations is inapposite. And this is so even if that caselaw sheds light on the principles that should govern how we treat such recommendations of special masters. The focus of the government's objection is, after all, the action of the district court. Likewise, equally inapposite are the various out-of-circuit decisions cited by Mr. Nelson and Ms. Varney involving failures to object to special master recommendations. *See* Aplees.' Br. at 12 n.6. Those cases involve objections to particular findings or recommendations by a special master, but it is the action of the district court in awarding attorney's fees that is at issue here, and that is the subject of the government's objection.

It is essential to distinguish an objection to the district court's statutory authority to award attorney's fees from an objection to the precise amount of fees recommended by the special master. The government timely raised the former objection; even Mr. Nelson and Ms. Varney concede as much. *See id.* at 14 ("Certainly, the United States had opposed the district court's award of attorney's fees."). More specifically, on June 9, 2017, the district court on remand held that

10

the United States was liable for Mr. Nelson's and Ms. Varney's injuries and reinstated the original damages award. The court also again awarded attorney's fees to Mr. Nelson and Ms. Varney. *See* Aplt.'s App. at 18 (Docket). On July 6, 2017, the government filed a motion for relief from the court's order awarding attorney's fees. It argued that, under § 2412(b), the court could not award fees pursuant to CRUS. *See id.* at 25–34. On March 22, 2018, the district court denied the government's motion and once again held that the award for attorney's fees was permissible. *See id.* at 89–108.

Importantly, the government could not immediately appeal this district court order because the court had not yet determined the exact amount of fees to be awarded. *See Am. Soda, LLP v. U.S. Filter Wastewater Grp.*, 428 F.3d 921, 924 (10th Cir. 2005) ("An award of attorneys' fees is not final and appealable . . . until it is reduced to a sum certain."); *Phelps v. Washburn Univ. of Topeka*, 807 F.2d 153, 154 (10th Cir. 1986) (per curiam) ("[I]f an award of attorney's fees is not reduced to a sum certain, it is not final."). It could not appeal the court's attorney's fees award until after the court had approved a final award amount, and that is precisely what the government eventually did. The critical point is that the government objects not to the *amount* awarded, but to the district court's authority to order *any* award. The government timely raised this authority objection, and it is thus properly preserved for our review.

**B**

We now turn to the chief issue presented in this appeal: whether CRUS qualifies under § 2412(b) of the EAJA as "any statute which specifically provides for" an attorney's fee award, and, in turn, whether the government must therefore pay Mr. Nelson's and Ms. Varney's attorney's fees. At its heart, the parties' dispute on this issue turns on the meaning of "any statute" in § 2412(b). The government offers a narrow interpretation, one limited to a discrete category of federal statutes; Mr. Nelson and Ms. Varney offer a broader interpretation, encompassing both federal and state statutes. We conclude that the plain text of § 2412(b) supports the interpretation offered by Mr. Nelson and Ms. Varney.

**1**

The government argues that "[t]he most natural reading of section 2412(b) is that a statute 'specifically provides for' a fee award only when it *directly applies* to the United States." Aplt.'s Opening Br. at 15 (emphasis added). That is, the government claims that § 2412(b) waives sovereign immunity for attorney's fees awards only in a "very specific class of litigation: actions brought against a federal entity under a federal statute, where the statute provides for attorney's fees for a prevailing plaintiff but not expressly in the case of a federal government defendant."[1] *Id.* at 22. Critically, under the government's view, state

---

[1]     The government helpfully elaborates on this point:

(continued...)

fee-shifting statutes, such as CRUS, do not fall within § 2412(b) because "they do not (and cannot) authorize [a] suit against the United States and therefore do not 'specifically provide for' fee awards as required under section 2412(b)." *Id.* at 24. In this regard, recall that it was a federal statute, the FTCA—not CRUS—that provided the foundation for the lawsuit of Mr. Nelson and Ms. Varney against the United States; it was only through the state-law incorporation mechanism in the FTCA that the United States's liability was determined under CRUS. *See, e.g.*, *Hoery v. United States*, 324 F.3d 1220, 1222 (10th Cir. 2003) ("[W]e resolve questions of liability under the FTCA in accordance with the law of the state where the alleged tortious activity took place." (quoting *Franklin v. United States*, 992 F.2d 1492, 1495 (10th Cir. 1993))).

The government insists that the plain text of the EAJA supports its argument. Its textual analysis naturally homes in on the phrase "any statute

---

[1](...continued)

> For example, the Age Discrimination in Employment Act, 29 U.S.C. [§] 621 et seq., authorizes suits against federal entities for age discrimination in employment and permits an award of attorney's fees against defendants, 29 U.S.C. [§] 626(b) (applying remedies found in 29 U.S.C. [§] 216(b), which include "a reasonable attorney's fee to be paid by the defendant"), but not expressly against the United States. In this context, at least some courts have held that section 2412(b) provides the necessary waiver of sovereign immunity to permit a fee award against a federal defendant to the same extent fees would be available against a private party.

Aplt.'s Opening Br. at 22.

13

which specifically provides for such an award." The government reasons that because § 2412(b) "concerns fee awards against the United States," the phrase "'such an award' must refer to an award *against the United States*." Aplt.'s Opening Br. at 21. Therefore, the government concludes that "the most natural reading of this clause is that a statute 'specifically provides for such an award' only if it *directly applies* to the United States," *id.* (emphasis added), that is, if the statute "creat[es] the cause of action against the United States,"[2] Aplt.'s Reply Br. at 6.

---

[2] This interpretation of § 2412(b)—indicating that, to allow for attorney's fees against the government, a statute must not only be federal, but also must create a cause of action against the government—differs from the argument that the government advanced before the district court. There, the government argued that it was not only necessary but sufficient that the qualifying statute be federal. Indeed, the government forthrightly admits that it has changed tack on appeal. *See* Aplt.'s Opening Br. at 26 n.4 ("We have consistently argued that the CRUS is not a qualifying statute within the meaning of section 2412(b), but the precise rationale for that conclusion on appeal differs somewhat from the argument we advanced below. In district court, the government argued primarily that the term 'any statute' in section 2412(b) is limited solely to federal statutes as a textual matter." (citation omitted)). Consequently, there is—at a minimum—a reasonable assertion that could be made that the government's interpretive argument is forfeited in whole or part. *See, e.g.*, *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) ("It is clear in this circuit that absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal. This is true whether an appellant is attempting to raise 'a bald-faced new issue' or 'a new theory on appeal that falls *under the same general category* as an argument presented at trial.'" (emphasis added) (citation omitted) (quoting *Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 722 (10th Cir. 1993))). However, Mr. Nelson and Ms. Varney have not asserted a lack of preservation regarding this matter; accordingly, we proceed to directly address the merits of the government's interpretive argument. *See, e.g.*, *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1139 (10th Cir. 2010) ("Plaintiffs have themselves forfeited any forfeiture argument they may have on this issue, and this court will consider the merits of Defendants' argument.").

The government reasons that state statutes such as CRUS do not provide a cause of action against the United States.  Instead, they are merely "borrowed for purposes of the federal cause of action that the FTCA created," and used to assess whether the government is liable for a tort.  Aplt.'s Opening Br. at 24.  That is, under the FTCA, a court "treats the United States as if it were a private individual being sued under state law for the same alleged tort, and it looks to state law to determine whether such a private individual would be liable and to what extent." *Id.*  Therefore, even though the government's FTCA liability in this case turns on CRUS, it nonetheless remains true, as the government sees things, that CRUS itself does not "provide[] a cause of action against the United States"; thus, it necessarily falls outside the scope of § 2412(b).  *Id.* at 25.  The government further notes that all three federal circuit courts that have directly addressed this issue have concluded that § 2412(b) "is limited to federal statutes," *id.* at 26, because "state statutes cannot authorize suit against the United States," *id.* at 28.

In response, Mr. Nelson and Ms. Varney argue that the plain language of § 2412(b) unambiguously provides that "a court may award attorney's fees to the prevailing party in any civil action involving the United States . . . under the terms of any statute specifically providing for an award of those attorney's fees." Aplees.' Br. at 15.  Mr. Nelson and Ms. Varney emphasize § 2412(b)'s use of the term "any statute" in its critical final sentence.  According to them, "'[a]ny statute' is expansive[;] it is not limited." *Id.* at 19.

15

More specifically, they contend that "there is no requirement in the language [of § 2412(b)] that the statute providing the cause of action [against the United States] also be the statute that provides for an award of attorney's fees." *Id.* at 23. Mr. Nelson and Ms. Varney offer some reasons why. Among other things, they insist that "Congress clearly could have used language tying the fee-shifting provision to the cause of action," yet opted not to expressly "require a link between the cause of action and the basis for an award of fees." *Id.* Further, they look for support in the first sentence of § 2412(b), which states that it applies to "any civil action by or against the United States." The phrase "any civil action" is not qualified by language suggesting that § 2412(b) applies only to actions based on federal statutes authorizing suits against the United States.

**2**

We believe Mr. Nelson and Ms. Varney have the better of this dispute. The most persuasive support for their interpretation of "any statute" in § 2412(b) comes from the statutory text of § 2412 itself. There are two good reasons to think that "any statute" in § 2412(b) does not refer only to federal statutes that create a cause of action against the United States. First, all other uses of the word "statute" in § 2412 are not preceded by the word "any," as in § 2412(b), and each of these uses of the term "statute" alone in § 2412 most naturally refers only to federal statutes. Second, the government's urged alternative textual interpretation of this broad language—that is, "[a] statute that 'specifically provides for such an

16

award' is one that . . . provides a cause of action against the United States and contains a fee provision for parties that prevail over the defendant," Aplt.'s Opening Br. at 25—cannot be squared with our precedent addressing § 2412(b)'s scope. We shall discuss each reason in turn.

We begin, first, by looking to all other references to "statute" in § 2412 as a whole. The word "statute" alone appears five times in § 2412. Only once—namely, in § 2412(b)—does the phrase "any statute" appear. As we shall soon explain, we conclude that each use of "statute" alone most naturally refers only to federal statutes. It is fair to reason, then, that the qualifier "any" in § 2412(b) broadens the scope of that usage of "statute" beyond federal statutes.

The first two uses of "statute" appear in § 2412(a)(1):

> Except as otherwise specifically provided by *statute*, a judgment for costs, *as enumerated in section 1920 of this title*, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, *in an amount established by statute*, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

28 U.S.C. § 2412(a)(1) (emphases added). The best interpretation of both uses of the term "statute" here is that they refer only to federal statutes—not also state statutes. A contrary interpretation would seem to create the possibility that a

17

state statute might dictate or override a grant of costs afforded under a federal statute—more specifically, as enumerated in 28 U.S.C. § 1920.

Our decision in *Stender v. Archstone-Smith Operating Trust*, 958 F.3d 938 (10th Cir. 2020), is most instructive, if somewhat indirectly, on this matter. The question presented in *Stender* was whether a federal court could award certain costs authorized under an applicable state law when those costs were not allowed under Federal Rule of Civil Procedure 54(d). We held that the court could not award the state-law-authorized costs. We reasoned that § 1920 alone defines the allowable costs a federal court may award under Rule 54(d). The state law in question allowed for a broader range of costs, but we concluded that, under Rule 54(d), a federal court could only award costs from the narrower list enumerated in § 1920.

The strong implication of *Stender* is that federal courts are bound to award only the *types* of costs specifically enumerated in § 1920—and not other types of costs that may be enumerated in more capacious or contradictory state laws. Thus, "statute" in the opening clause of § 2412(a)(1)—"[e]xcept as otherwise specifically provided by statute"—is not naturally read as encompassing state statutes. Reading "statute," here, that broadly would seem to leave open the possibility that a state statute's capacious enumeration of potentially taxable costs might apply instead of § 1920's enumeration.

18

The same basic rationale would likewise caution against interpreting the second use of "statute"—in § 2412(a)(1)—to include state statutes.  Recall, again, that § 2412(a)(1)'s final sentence reads: "A judgment for costs when taxed against the United States shall, in an amount established by *statute*, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation."  28 U.S.C. § 2412(a)(1) (emphasis added).  Here, too, interpreting "statute" to encompass state statutes would leave open the possibility that a judgment for costs might be assessed in a manner inconsistent with federal law.  For example, § 1920(5) lists "docket fees under section 1923" as a permissible cost that may be awarded.  28 U.S.C. § 1920(5).  Section 1923, in turn, lists various dollar amounts for various kinds of docket fees.  Surely no state law that enumerated permissible award amounts for certain docket fees could supplant § 1923's enumeration of a permissible award amount for the same docket fees. But interpreting the term "statute" in the language "an amount established by statute" to mean federal and *state* statutes would appear to create precisely this possibility.

We have held that any award for costs under § 2412(a)(1) must strictly adhere to the dollar *limits* enumerated in § 1920, as § 2412(a)(1) clearly indicates. *See, e.g.*, *Hull by Hull v. United States*, 978 F.2d 570, 573 (10th Cir. 1992) ("[T]he very terms of section 2412(a) indicate that the limits contained in sections 1920 . . . apply to any award of costs made pursuant to that statute.").  In light of

19

this holding and our decision in *Stender*, then, we can reasonably conclude that the two uses of "statute" in § 2412(a)(1) refer most naturally only to federal statutes.

A third use of "statute" alone appears in § 2412(d)(1)(A):

> Except as otherwise specifically *provided by statute*, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).  Here again, "statute" most naturally refers only to federal statutes.  Section 2412(d)(1)(A) requires a federal court to award fees in certain circumstances; unlike § 2412(b), this provision uses the term "shall award" instead of "may award."  It would be odd indeed—absent clear textual evidence to the contrary—to conclude that "statute" here encompasses state statutes.  If it did, it would seem to create the possibility that a state statute might delimit what a federal statute requires a court to do—i.e., award costs in scenarios expressly defined by subsection (d)(1)(A).  It seems most appropriate, then, to conclude that "statute" in § 2412(d)(1)(A) likewise refers only to federal statutes.

The fourth use of "statute" appears in § 2412(d)(5)(D)(iii).  That provision requires the Administrative Conference of the United States to include in an

annual report certain information about each case in which the government was obligated to pay a prevailing parties' fees. Section 2412(d)(5)(D)(iii) stipulates that the report must specifically include "the statute under which the plaintiff filed suit." 28 U.S.C. § 2412(d)(5)(D)(iii). Here, too, the best interpretation of "statute" is "federal statute." A contrary interpretation would suggest that a plaintiff might be suing the federal government under a state statute.

There is, however, one more notable use of "statute" alone in § 2412, and it comes in the first sentence of § 2412(b) itself:

> Unless expressly *prohibited by statute*, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action.

28 U.S.C. § 2412(b) (emphasis added). If any use of "statute" alone in § 2412 might be credibly interpreted to encompass federal and state statutes, it is this one. After all, reading § 2412(b) as a whole, one might fairly conclude that it would be inconsistent to suggest that, under § 2412(b)'s first sentence, only a federal statute may expressly prohibit an attorney's fees award, while at the same time also suggesting that, under § 2412(b)'s final sentence, both a federal *and* state statutes may authorize such an award. *Cf. First Nat'l Bank of Durango v. Woods* (*In re Woods*), 743 F.3d 689, 697 (10th Cir. 2014) ("[W]e recognize that '[t]he normal rule of statutory construction assumes that identical words used in

21

different parts of the same act are intended to have the same meaning.'" (second alteration in original) (quoting *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986))).

Even so, we conclude that it would be wrong to interpret the first use of "statute" in § 2412(b) and the later use of "any statute" as identical in meaning. As the district court rightly noted, the government's argument to the contrary runs afoul of the rule against surplusage. *See* Aplt.'s App. at 101. This rule "encourages courts to give meaning to every word used in a statute," on the assumption that "Congress would not have included superfluous language." *Nutraceutical Corp. v. Von Eschenbach*, 459 F.3d 1033, 1039 (10th Cir. 2006).

When "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting *Any*, WEBSTER'S THIRD NEW INT'L DICTIONARY 97 (1976)); *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219–21 (2008) (interpreting the term "any" expansively to conclude that "Congress'[s] use of 'any' to modify 'other law enforcement officer' is most naturally read to mean law enforcement officers of whatever kind"); *see also Kelley v. City of Albuquerque*, 542 F.3d 802, 813–14 (10th Cir. 2008) (interpreting the term "any" expansively to conclude that "the phrase 'participated in *any* manner in . . . [a] proceeding' . . . relates to all types of participation" (alteration and first omission in original) (quoting 42 U.S.C. § 2000e-3(a))). The rule against surplusage, then,

22

would counsel us to construe "any statute," in § 2412(b), in a different and broader manner than the provision's initial, unadorned reference to "statute" in order to give meaning to the term "any."  It follows that, under these circumstances, we may construe the plain meaning of the term "any statute" to include within its sweep state statutes, as well as federal statutes.  *Cf. O'Connor v. U.S. Dep't of Energy*, 942 F.2d 771, 773–74 (10th Cir. 1991) (holding, in construing another section of the EAJA, that the term "any court," as it appeared in isolation and without qualification, had a different, broader meaning than the statutorily defined term "any court of the United States").

Moreover, our precedent forecloses the government's attempt to limit the term "any statute" in § 2412(b)'s final sentence to only those statutes that "provide[] a cause of action against the United States and contain[] a fee provision for parties that prevail over the defendant."  Aplt.'s Opening Br. at 25; *see also* Aplt.'s Reply Br. at 7 (arguing that the language "specifically provides for such an award" contextually limits "any statute" to a universe of federal statutes "provid[ing] a cause of action against the United States" (quoting 28 U.S.C. § 2412(b))); Oral Arg. at 5:40–6:00 (asserting that § 2412(b) is limited to a statute "that provides the civil action against the United States under which the person seeking fees is the prevailing party").  This interpretation cannot be squared with our decision in *Adamson v. Bowen*, 855 F.2d 668 (10th Cir. 1988).

23

In *Adamson*, we held the term "any statute" in § 2412(b) waived the government's immunity from monetary sanctions under Federal Rule of Civil Procedure 11. *Id.* at 670–71. Rejecting the government's arguments to the contrary, we reasoned that "[t]his section . . . would appear on its face to be sufficiently broad to waive the government's immunity from fee awards pursuant to the Federal Rules of Civil Procedure, which have 'the force of a federal statute.'" *Id.* at 671 (footnote omitted) (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 13 (1941)).

Although the government attempts to diminish the import of *Adamson* because "the Federal Rules apply directly to the United States," *see* Aplt.'s Opening Br. at 32, its interpretation of § 2412(b) requires a statute to "provide[] a cause of action against the United States" to fall within § 2412(b)'s waiver of sovereign immunity, *see, e.g.*, Aplt.'s Opening Br. at 25; Aplt.'s Reply Br. at 7. But the Federal Rules of Civil Procedure do not "specifically provide" such a cause of action against the United States; rather, like CRUS, they allow for attorney's fees in a suit brought under *other* causes of action. *See Adamson*, 855 F.2d at 670, 677 (affirming award of attorney's fees under Rule 11 in appeal of Secretary's denial of social security disability benefits); *see also United States v. Gavilan Joint Cmty. Coll. Dist.*, 849 F.2d 1246, 1251 (9th Cir. 1988) (reasoning that an award of costs and attorney's fees under Rule 11 would be permissible when the government brought a suit that was clearly barred by the statute of

limitations); *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910–11 (9th

Cir. 1986) (affirming an award of costs and attorney's fees under Rule 37 when

the government committed discovery abuses in an antitrust action).  The

government's proffered reading of § 2412(b) is thus too narrow to be consonant

with our prior interpretation of the provision.[3]

    We conclude, therefore, that the text of § 2412 as a whole—construed in a

manner consistent with the rule against surplusage and our precedent—indicates

that "any statute" in § 2412(b) does *not* refer to federal statutes alone.  Rather,

§ 2412(b) means what it says: it waives the government's sovereign immunity

from liability under any statute—state or federal—that would otherwise provide

attorney's fees against a private party.

    We thus conclude that the plain text of § 2412(b) is sufficiently clear to

resolve the chief issue presented in this appeal.  To be sure, the government is

correct in asserting that all of our sister circuits that have addressed the meaning

of "any statute" in § 2412(b) have "concluded that . . . the term 'any statute' in

section 2412(b) is limited to federal statutes."  Aplt.'s Opening Br. at 26.  Each of

these decisions, however, relied exclusively on the EAJA's legislative history.

---

    [3]    At oral argument, the government attempted to distinguish *Adamson*
by contending that the Federal Rules are "implict[ly] built into the cause of
action" in any suit against the United States.  Oral Arg. at 12:10–12:13.  But this
argument acknowledges that the Federal Rules do not themselves create a cause of
action against the United States.  And it fails to distinguish CRUS, which also
maps onto a federal cause of action against the United States.

*See Joe v. United States*, 772 F.2d 1535, 1537 (11th Cir. 1985) (per curiam) (resting its interpretive analysis exclusively on the EAJA's legislative history, particularly the House Committee Report); *see also Anderson v. United States*, 127 F.3d 1190, 1191 (9th Cir. 1997) (noting that "[w]e adopt the reasoning and holding of *Joe v. United States*"); *cf. Olson v. Norman*, 830 F.2d 811, 822 (8th Cir. 1987) (relying on EAJA's the House Committee Report and concluding "[w]e do not read § 2412(b) to subject the United States to liability for attorneys' fees based on state laws, be they statutory or common").

Indeed, *Joe*—which is the seminal case on which our sister circuits have relied—completely failed to perform a threshold textual analysis of the term "any statute." *See Joe*, 772 F.2d at 1537. Instead, the Eleventh Circuit there opted, with virtually no independent analysis, to place its confidence in the work of a single federal trial court that "relied primarily on the legislative history of Section 2412(b)." *Id.* (citing *Mark v. Kanawha Banking & Tr. Co. N.A.*, 575 F. Supp. 844 (D. Or. 1983)). And our sister circuits that have elected to follow *Joe*—notwithstanding the limited scope of its analysis—have similarly elided any discussion of the plain meaning of the term "any statute." *See Anderson*, 127 F.3d at 1191 (omitting any independent analysis while adopting *Joe*'s holding); *Olson*, 830 F.2d at 822 (performing a one-paragraph analysis of the EAJA's statutory history without discussion or textual analysis of the term "any statute"). Such an approach is at odds with well-settled principles of statutory

26

interpretation, under which an examination of the plain meaning must be the first step. *See St. Charles Inv. Co. v. Comm'r*, 232 F.3d 773, 776 (10th Cir. 2000) ("As in all cases requiring statutory construction, 'we begin with the plain language of the law.'" (quoting *United States v. Morgan*, 922 F.2d 1495, 1496 (10th Cir. 1991)). Accordingly, because the decisions of our sister circuits have not conducted an analysis of the statute's text—which we consider to be appropriate and essential to the resolution of this case—we decline to follow their rationale.[4]

Having determined that the statutory text unambiguously covers state statutes, we end our analysis there. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 187 n.8 (2004) (recognizing that courts should ordinarily "resort to legislative history only when necessary to interpret ambiguous statutory text"); *see also Dutcher v. Matheson*, 840 F.3d 1183, 1201 n.9 (10th Cir. 2016)

---

[4] Furthermore, it is noteworthy that the interpretation of § 2412(b) that the government advances on appeal is even narrower than that of our sister circuits. With varying degrees of explicitness, these decisions have concluded, based on the legislative history, that § 2412(b)'s allowance of attorney's fees is limited to federal statutes. *See Joe*, 772 F.2d at 1537 (interpreting the statute to "refer[] only to federal statutes"); *Olson*, 830 F.2d at 822 (interpreting the statute "to refer only to federal law"); *cf. Anderson*, 127 F.3d at 1191 (adopting "the reasoning and holding of *Joe*" without expressly construing the legislative history to apply only to federal statutes). They have not gone further—like the government here—and required that the federal statutes at issue "create[] the cause of action and contain[] a fee provision that does not specifically include the United States." Aplt.'s Reply Br. at 15. Accordingly, even if we were inclined to look to these other circuit decisions for guidance (and we are not), they would not fully resolve the interpretive question before us.

("Ordinarily, legislative history should be referenced only when the statutory language is ambiguous."); *Edwards v. Valdez*, 789 F.2d 1477, 1481 (10th Cir. 1986) ("When the meaning of the statute is clear, it is both unnecessary and improper to resort to legislative history to divine congressional intent."). We are able to conclude—from our reading of § 2412(b)'s plain terms—that the statute's reference to "any statute" applies to *both* state and federal statutes. On that basis alone, we ground our resolution of the merits issue presented here and decline to resort to legislative history.

## III

Accordingly, for the foregoing reasons, we **AFFIRM** the district court's judgment.