FILED
United States Court of Appeals
Tenth Circuit

July 16, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

BRIAN ESTRADA,

     Plaintiff - Appellant,

v.

                         No. 23-1189

JACOB SMART,

     Defendant - Appellee.

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:20-CV-00549-WJM-STV)**
_____

Nicole L. Masiello (Robert Reeves Anderson, Arnold & Porter Kaye Scholer
LLP, Denver, Colorado, and Andrew T. Tutt, Arnold & Porter Kaye Scholer
LLP, Washington, DC, with her on the briefs), Arnold & Porter Kaye Scholer
LLP, New York, New York, for Appellant.

Abigail L. Smith, Senior Assistant Attorney General (Philip J. Weiser,
Colorado Attorney General, with her on the brief), Colorado Department of
Law, Denver, Colorado, for Appellee.
_____

Before **McHUGH**, **MURPHY**, and **FEDERICO**, Circuit Judges.
_____

**FEDERICO**, Circuit Judge.

     When Congress enacted the Prison Litigation Reform Act ("PLRA") in

1996, it declared that "[w]hat this country needs . . . is fewer and better

prisoner suits." *Jones v. Bock*, 549 U.S. 199, 203 (2007). The PLRA elevated mandatory administrative exhaustion to its current height in 42 U.S.C. § 1997e(a). Section 1997e(a) states: "No action shall be brought **with respect to prison conditions** under . . . Federal law, by a prisoner confined **in any jail, prison, or other correctional facility** until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added).

Section 1997e(a) requires a prisoner to exhaust all available administrative remedies "prior to filing a lawsuit regarding prison conditions in federal court." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citing § 1997e(a)). Exhaustion under the PLRA is "mandatory" and "unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211 (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).

In May 2018, Plaintiff Brian Estrada was a prisoner confined in the custody of the Colorado Department of Corrections ("CDOC"). While attempting to escape a Colorado county courthouse, he was shot three times by Defendant Jacob Smart, a CDOC officer. Estrada later sued Smart under 42 U.S.C. § 1983 and alleged excessive force, but the district court granted Smart's summary judgment motion. It concluded that Estrada had failed to exhaust all available CDOC administrative remedies by not following CDOC's three-step grievance process.

Final judgment was entered, and Estrada timely appealed, so we have jurisdiction under 28 U.S.C. § 1291. Estrada now argues that a county courthouse is not a CDOC prison, so his lawsuit is not "with respect to prison conditions" under the PLRA. He also claims the CDOC grievance procedures apply only to CDOC prisons, so his claim is outside the scope of when and where they apply.

Having considered the record, briefing, and oral argument in full, we affirm the entry of summary judgment. In this PLRA case, geography is not the controlling factor. Instead, as the district court correctly determined, the PLRA and CDOC's grievance procedures both applied to the shooting of a CDOC inmate by a CDOC officer.

**I**

In May 2018, Estrada was an inmate of CDOC. That month, CDOC transported him to the Logan County Courthouse in northeastern Colorado for a hearing in a pending criminal case. While in the jury box of a courtroom on the second floor, Estrada attempted to escape. His hands and ankles were shackled to his waist, so he could only shuffle across the floor. During Estrada's shuffle across the courtroom, he was shot three times by Smart, a CDOC officer, who was posted in the courtroom and in charge of guarding Estrada. No other officer in the courtroom had reached for their gun. Estrada was unarmed.

3

Estrada survived being shot and returned to custody as a CDOC inmate. In 2020, while in CDOC custody, he sued Smart, in his personal capacity, in federal district court in Colorado. His complaint alleged a single claim for excessive force in violation of the Eighth Amendment under § 1983.

After Estrada filed his First Amended Complaint, Smart moved to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) based on qualified immunity. The district court denied that motion, ruling that Smart "should have been on notice that use of deadly force on an unarmed prisoner restrained in the manner as was Plaintiff would violate Plaintiff's Eighth Amendment right to be free of the use of excessive force[.]" Aplt. App'x at 79–80.

The case then entered the discovery phase. Beyond Estrada's deposition, it is unclear whether any other depositions occurred. The parties cite to no depositions in the record, nor do they mention written discovery.

After discovery concluded, Smart filed a motion for summary judgment under Rule 56 based on his affirmative defense of failure to exhaust administrative remedies. Estrada was a CDOC inmate at the time of the shooting and when he filed suit, yet he did not pursue CDOC's three-step grievance process regarding the courthouse shooting.

4

In support of the summary judgment motion, Smart introduced the following evidence: (1) a declaration from Anthony DeCesaro (the "DeCesaro Declaration"), a CDOC Step 3 Grievance Officer with personal knowledge about Estrada's grievance filings and the scope of the CDOC's grievance procedures; (2) CDOC Administrative Regulation ("AR") 850-04; and (3) portions of Estrada's deposition testimony.

As described by Estrada in his Opening Brief, the DeCesaro Declaration "appended a complete copy of the operative administrative regulation governing grievances, and the regulation in effect at the time this suit was filed." Aplt. Br. at 15 (citations omitted). The DeCesaro Declaration detailed CDOC's "formalized three-step grievance process for inmates set forth in Administrative Regulation ('AR') 850-04." Aplt. App'x at 116.

At summary judgment, Estrada disputed only the scope of AR 850-04. He argued it did not apply to the courthouse shooting, as he pointed out that the Logan County Courthouse is not a CDOC facility.

As to the scope of the administrative regulation, both sides focused on AR 850-04(IV)(D)(1), which states that the CDOC grievance procedures cover "a broad range of complaints including, but not limited to: policies, conditions, and incidents within the facility that affect the offender

personally; actions by employees and offenders and for resolving offender issues relating to health care concerns." *Id.* at 123.

Smart also showed that other language in AR 850-04 supported his interpretation. He pointed to AR 850-04(IV)(D)(2), which lists several exclusions for which CDOC's grievance procedures do not apply; it states that "[t]his grievance procedure may not be used to seek review" of the excluded topics listed. *Id.* Yet incidents external to a CDOC facility, including a courthouse, are not part of this exclusions list. *Id.*

DeCesaro next declared: "Inmates may also file grievances regarding incidents that occur outside of the facility while they are in the custody of the CDOC, such as during transport to court appearances or medical visits." Aplt. App'x at 117 (citing AR 850-04(IV)(D)(1)-(2)). AR 850-04 supports this statement because it says the CDOC grievance procedures are available "to offenders sentenced to the [C]DOC. This includes [C]DOC offenders housed in private facilities and offenders who have been released to parole, community, or ISP supervision." Aplt. App'x at 121 (AR 850-04(IV)(A)(2)); *see also* Aplt. App'x at 117 (DeCesaro Declaration, at ¶ 10) (citing AR 850-04(IV)(A)(2)).

DeCesaro further established that Estrada had filed three grievances on unrelated topics in the year following the shooting, which ranged from May 1, 2018, to May 30, 2019. Thus, the CDOC grievance system was

6

"available" to Estrada, and he utilized it three times in the year following the courthouse shooting. But, as DeCesaro established, Estrada did not file a grievance for the courthouse shooting.

By introducing the DeCesaro Declaration and attachments, Smart met his burden of proof on his affirmative defense. He established that Estrada failed to exhaust the available CDOC administrative remedies, while simultaneously filing three grievances on unrelated topics.

At this point, the summary judgment burden shifted to Estrada, the nonmovant, to show that the CDOC regulations did not apply or were not available. To survive summary judgment, Estrada needed to offer evidence. But he provided only bare allegations and legal arguments made by his counsel about the scope of AR 850-04. And he did not make the definitional challenges to the PLRA that he now raises on appeal. Estrada failed to attach or cite any evidence or deposition testimony (for example, deposition testimony from DeCesaro or a Federal Rule 30(b)(6) deposition of CDOC); his response included as exhibits only an inmate orientation video and handbook from a CDOC facility. He failed to establish the factual or legal significance of either exhibit. Nor did he offer his own declaration or deposition testimony to describe what he received from CDOC regarding the grievance procedures, when he received it, where he received it, from whom he received it, or anything else. Indeed, in support of his argument before

the district court, Estrada effectively provided no summary judgment evidence.

The district court granted the motion for summary judgment without holding an evidentiary hearing. It ruled that both the PLRA and CDOC's three-step grievance procedures applied to the May 2018 courthouse shooting, and that Estrada failed to exhaust CDOC's available administrative remedies.

On appeal, Estrada argues the May 2018 courthouse shooting is beyond the scope of both the PLRA, generally, and the CDOC's specific three-step grievance process. According to Estrada, a courthouse is not a prison, so his claim about the courthouse shooting is not "with respect to prison conditions," as the scope of § 1997e(a) requires.

## II

"We review de novo the district court's finding of failure to exhaust administrative remedies." *Little*, 607 F.3d at 1249 (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

"Failure to exhaust under the PLRA is an affirmative defense." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). When a defendant moves for summary judgment based on an affirmative defense, Rule 56 puts the burden on the defendant to "demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil*, 105

8

F.3d 562, 564 (10th Cir. 1997). "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Id.* "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." *Id*. Applied to this case, "[o]nce" Smart "prove[d] that [Estrada] failed to exhaust," then "the onus f[ell] on [Estrada] to show that remedies were unavailable to him[.]" *Tuckel*, 660 F.3d at 1254.

## III

First, we must decide whether the district court correctly decided the exhaustion question, without a hearing, and instead of sending that question to a jury. Estrada argues the district court usurped the role of a jury by resolving all disputed issues regarding administrative exhaustion at summary judgment. Arguing by analogy to a breach of contract claim decided under state law, Estrada claims that the district court violated Rule 56 by resolving all disputes. But the CDOC grievance procedures are not a contract between two parties, nor are they interpreted based on state law. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 174 (2d Cir. 2006) ("There is no indication that Congress intended state law to govern [how we interpret the PLRA] . . . or that the PLRA's exhaustion requirement should vary from state to state.").

9

We affirm the district court's decision to resolve all disputed issues on administrative exhaustion, including all disputed facts (if any existed). The district court correctly noted that our circuit "has not specifically instructed district courts as to how they should resolve factual disputes in the context of exhaustion." Aplt. App'x at 199. We do so now and join "the Second, [Third,] Fifth, Seventh, Ninth, and Eleventh Circuits and hold that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013) (collecting cases).[1]

Prisoners "have a right to a jury trial on the merits, but this right does not guarantee resolution by a jury of all factual disputes." *Id.* at 269. Ultimately, "[j]uries decide cases, not issues of judicial traffic control." *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008). And "[u]ntil the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to." *Id.*

More fundamentally, "exhaustion is a precondition for bringing suit" under the plain language of § 1997e(a). *Small*, 728 F.3d at 269. The PLRA states: "'No action *shall be brought* with respect to prison conditions . . .

---

[1] This holding contains a caveat: The holding applies "as long as the facts are not bound up with the merits of the underlying dispute." *Id.* at 270. In this case, Estrada makes no argument that the merits are intertwined with administrative exhaustion.

until such administrative remedies as are available are exhausted.'" 42 U.S.C. § 1997e(a) (emphasis added). The term "shall" is a direct command that we must follow. *Smith v. Spizzirri*, 144 S. Ct. 1173, 1177 (2024) (Congress's "use of the word 'shall' 'creates an obligation impervious to judicial discretion.'") (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)). Thus, to allow a § 1983 claim to reach a jury trial *before* determining the status of administrative exhaustion would violate the statute's plain language.

Estrada also claims the district court erred by failing to hold an evidentiary hearing. Ordinarily, if there are disputed issues of fact, a district court should hold an evidentiary hearing before granting summary judgment on the defense of failure to exhaust administrative remedies. In this case, however, Estrada offered "no evidence to support" his "allegation[s]" about the CDOC grievance procedures "beyond the allegation[s] [themselves]." *May v. Segovia*, 929 F.3d 1223, 1235 (10th Cir. 2019). While Estrada attached a CDOC prison orientation video and inmate handbook to his summary judgment response, they stayed inert without testimony or a declaration to give them any force. The mere existence of a video and an inmate handbook tells us nothing about whether the CDOC grievance procedures were available for Estrada to complain about the courthouse shooting.

11

To avoid summary judgment, a nonmovant must offer evidence, not bare allegations. *See* Fed. R. Civ. P. 56(c)(1)(A) (setting forth how a party introduces summary judgment evidence, including depositions and declarations, to support a factual assertion). Applied here, that standard means once Smart introduced evidence showing that Estrada had filed three other grievances but none about the May 2018 shooting, the burden shifted to Estrada to "do more than refer to allegations of counsel contained in a brief to withstand summary judgment." *Adams v. Am. Guar. and Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (quoting *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)). "Rather, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit [or declaration],[2] a deposition transcript or a specific exhibit incorporated therein." *Id.* (quoting *Thomas*, 968 F.2d at 1024); *accord Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (emphasizing that "bald allegations cannot preclude summary judgment" in a PLRA exhaustion case).

In sum, in a prisoner case involving the defense of failure to exhaust, a district court should, before trial, resolve all disputed issues of law and fact that are not intertwined with the merits of the claim. If the plaintiff

---

[2] 28 U.S.C. § 1746 (making affidavits and declarations effectively synonymous).

12

establishes a disputed issue of material fact, an evidentiary hearing should usually be held. If the district court declines to conduct a hearing, it should explain why one is unnecessary. But if neither party requests an evidentiary hearing, a district court is not obligated to raise the topic sua sponte. Here, the district court correctly followed this procedure.

## IV

We now turn to whether Estrada forfeited his challenge to the scope of the PLRA. Estrada argues that the PLRA does not apply to a courthouse shooting – or any location outside the prison walls. This argument is new because Estrada did not make it before the district court when he opposed Smart's motion for summary judgment. Rather, he focused his argument on the scope of the CDOC regulation. *See* Aplt. App'x at 200.

However, we will consider this argument on appeal because the district court thoroughly analyzed the scope of the PLRA in its order granting summary judgment. We set aside our general rules on forfeiture and waiver when an issue has been "passed upon," meaning "the district court explicitly [has] consider[ed] and resolve[d] an issue of law on the merits." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 991–92 (10th Cir. 2019) (quoting *United States v. Verner*, 659 F. App'x 461, 466 (10th Cir. 2016)); *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1328 (10th Cir. 2003) ("We conclude that when the district court sua sponte raises and

explicitly resolves an issue of law on the merits, the appellant may challenge that ruling on appeal on the ground addressed by the district court even if he failed to raise the issue in district court. In such a case, review on appeal is not for 'plain error,' but is subject to the same standard of appellate review that would be applicable if the appellant had properly raised the issue."). The district court extensively considered the scope of the PLRA, along with the CDOC grievance procedure, when it granted summary judgment in favor of Smart. Because it "passed upon" the question of the scope of the PLRA, we therefore reach Estrada's PLRA challenge raised on appeal.

## V

Next, we must examine the scope of the PLRA. That is, whether and how it applies to Estrada's § 1983 claim for excessive use of force based upon a courthouse shooting.

## A

Regarding the applicability of the PLRA, Estrada's appellate briefing centers around a geography-based test. Under his proposed test, the PLRA's exhaustion requirement applies only to a claim for relief "related to the conditions of . . . confinement in prison." Aplt. Br. at 11. In turn, he contends that because a courthouse is not a prison, the PLRA does not apply to the May 2018 courthouse shooting.

14

In evaluating Estrada's geography-based test, we start with the text of § 1997e(a). *Wichita Ctr. for Graduate Med. Educ., Inc. v. United States*, 917 F.3d 1221, 1224 (10th Cir. 2019) ("As always, we start with the plain meaning of the text."). Congress did not define the terms in § 1997e(a). But a related provision of the PLRA, 18 U.S.C. § 3626(g)(2), defines a "civil action with respect to prison conditions" broadly as "any civil proceeding . . . with respect to the **conditions of confinement** or the effects of actions by government officials on the lives of persons confined in prison[.]"[3] (emphasis added). The district court cited this definition when it concluded that the PLRA applied to a courthouse shooting, and it explained that we have cited § 3626(g)(2) in support of applying the PLRA to a prisoner case regarding activity outside a prison. Aplt. App'x at 201 (discussing *Dmytryszyn v. Hickox*, 172 F.3d 62, *1 (10th Cir. 1999) (unpublished)).

We agree with the district court's use of the § 3626(g)(2) definition to interpret "prison conditions" in § 1997e(a). Our court has cited § 3626(g)(2) in a case concluding that § 1997e(a) reaches a prisoner "challenging the amount

---

[3] "The PLRA is codified in scattered sections of Titles 11, 18, 28, and 42 of the United States Code[.]" *Green v. Young*, 454 F.3d 405, 409 n.1 (4th Cir. 2006). The PLRA's exhaustion requirement, § 1997e(a), is in Title 42 of the U.S. Code, while § 3626(g)(2) is in Title 18. Both sections were enacted at the same time in the same law: the Omnibus Consolidated Recissions and Appropriations Act of 1996, PL 104–134, April 26, 1996, 110 Stat. 1321.

of compensation he received for work performed outside the prison." *Dmytryszyn*, 172 F.3d at *1. In another case, we applied § 1997e(a) to "an assault at [a] county courthouse" where the plaintiff was in custody, *Forbes v. Garcia*, 696 F. App'x 381, 382 (10th Cir. 2017) (unpublished) – a nearly identical fact pattern to this case. Thus, although unpublished, we have in two prior cases considered these two statutory provisions together to reject the strict geographic test proposed by Estrada.

Estrada counters that the Supreme Court has cast doubt on importing the language in § 3626(g)(2) to define the scope of § 1997e(a). We do not sense this same doubt. Rather, the Supreme Court "express[ed] no definitive opinion on the proper reading of § 3626(g)(2)" as applied to § 1997e(a). *Porter*, 534 U.S. at 525 n.3.

Our marrying together of § 3626(g)(2) with § 1997e(a) aligns with three other Circuits, who have held it is proper to import the § 3626(g)(2) definition to the § 1997e(a) exhaustion requirement. We agree with them that both statutes "are part of the same legislation with the same overarching objectives," and "it makes good sense to assume that a definition provided by Congress in one statute applies to another related statute." *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Ruggerio*, 467 F.3d at 175 (same); *Witzke v. Femal*, 376 F.3d 744, 752–53 (7th Cir. 2004) (same); *Alexander S. v. Boyd*, 113 F.3d 1373, 1381 (4th Cir.

16

1997), *abrogated on other grounds by Martin v. Hadix*, 527 U.S. 343 (1999) (same).

Estrada repeatedly cites the Seventh Circuit's decision in *Witzke* to argue that the phrase "prison conditions" includes only the area inside a prison. Aplt. Br. at 22—24. We agree that *Witzke* is persuasive, but it does not help Estrada in this appeal.

In *Witzke*, a prisoner alleged that his claim was not "with respect to prison conditions" under § 1997e(a) because it involved "his treatment as a probationer participating in rehabilitation programs" and in a halfway house. 376 F.3d at 749–50; *see id.* at 750 ("Mr. Witzke contends that he is not complaining of *prison* conditions. Rather, he maintains that the alleged events took place while he was a probationer participating in probationary programs; therefore, he continues, he is not complaining about *prison* conditions but about his treatment while he was a probationer. Such allegations are, in his view, pre-incarceration claims."). The Seventh Circuit rejected the prisoner's arguments on scope. It first relied on the broad definition in § 3626(g)(2) and then observed that the term "prison" is also broadly defined in the PLRA as "any Federal, State, or local facility that incarcerates or detains juveniles or adults accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law." *Id.* at 752 (quoting 18 U.S.C. § 3626(g)(5)); *see also Jackson v. Johnson*, 475

17

F.3d 261, 266 (5th Cir. 2007) (favorably discussing *Witzke*). Like the court in *Witzke*, we conclude the § 3626(g)(2) definition applies to the PLRA and aids in our decision to reject Estrada's strict geography test.

## B

For Estrada, on the day of the May 2018 courthouse shooting, the Logan County courthouse functioned as a "prison." It was a "local facility" that "detains" inmates, like Estrada, "accused" or "convicted" of "violations of criminal law[.]" 18 U.S.C. § 3626(g)(5). Estrada was a prisoner in CDOC custody at the time he was shot; he was fully restrained, shackled, and under the control of armed CDOC officers inside the courthouse. He was only at the courthouse temporarily and only for a hearing in another Colorado state criminal case. Likewise, he was transported there (and also shot) by a CDOC officer. And, finally, but-for the shooting, he would have been transported back to the Logan County jail from the courthouse in CDOC custody.

It is important to our holding that every case fact fits under CDOC's umbrella. When the shooting happened, Estrada was in CDOC custody and Smart was acting as a CDOC officer. This posture distinguishes this case from the Second Circuit case Estrada relies on, *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54 (2d Cir. 2015).

18

In *Hubbs*, the plaintiff sued the sheriff's deputies under § 1983 for beating him in a holding cell inside a courthouse. *Id.* at 57. The Second Circuit reversed summary judgment, but not because of the geographic location of the courthouse. Rather, the sheriff's deputies (defendants) did not adduce sufficient evidence to establish the exhaustion affirmative defense at the summary judgment stage. *Id.* at 56–57. The available grievance procedure in that case stated it did not apply to issues and events outside of the warden's control, and the defendants' summary judgment filings failed to establish that the deputies fell within the warden's chain of command. *Id.* at 59–61. As a result, the Second Circuit determined, on the limited record before it, "no administrative remedies were available to [plaintiff], and there was thus nothing for him to exhaust." *Id.* at 61. Here, in contrast, Estrada was a CDOC inmate and Smart was a CDOC officer. As a result, CDOC's grievance procedures applied.

Again, whether the PLRA applies is not dependent strictly and solely upon geography but on whether a prisoner is confined in any jail, prison, or other correctional facility. Congress used the term "any" in § 1997e(a). "The term 'any' ensures that the definition has a wide reach[.]" *United States v. Hutchinson*, 573 F.3d 1011, 1022 (10th Cir. 2009) (quoting *Boyle v. United States*, 556 U.S. 938, 944 (2009)); *see also Nelson v. United States*, 40 F.4th 1105, 1115 (10th Cir. 2022) (holding that "the word 'any' has an expansive

19

meaning, that is, 'one or some indiscriminately of whatever kind'") (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). Here, the word "any" expands a list of three nouns already listed disjunctively, i.e., "any jail, prison, or other correctional facility[.]" § 1997e(a). "Equally broad is the phrase 'with respect to.'" *Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1205 (10th Cir. 2023). The phrase "with respect to prison conditions" is therefore "unmistakably broad[.]" *Id.*

"Time and again," the Supreme Court has "refus[ed] to add unwritten limits onto [the PLRA's] rigorous textual requirements" and "reject[ed] every attempt to" narrow the PLRA. *Ross v. Blake*, 578 U.S. 632, 639 (2016). In fact, "§ 1997e(a) mandates initial recourse to the prison grievance process even when a prisoner seeks . . . a remedy not available in that process[.]" *Porter*, 534 U.S. at 525 n.4 (describing the holding in *Booth v. Churner*, 532 U.S. 731, 741 (2001)).

We are bound to adhere to this clear guidance. No federal Circuit has adopted Estrada's narrow reading of the PLRA; instead, our sister Circuits have all determined the scope of the PLRA is broadly construed, as we do again in this case. *See, e.g.*, *Ruggiero*, 467 F.3d at 174 (joining "[t]wo other courts of appeals" in reading the phrase "any jail, prison, or other correctional facility" within § 1997e "expansively") (first citing *Witzke*, 376 F.3d at 744; and then citing *Alexander S. v. Boyd*, 113 F.3d 1373 (4th Cir.

1997), *abrogated on other grounds by Martin v. Hadix*, 527 U.S. 343 (1999)); *id.* at 175 ("By referring to 'prisoners,' Congress placed a constraint on suits filed by all litigants who could be characterized as prisoners, regardless of the type of facility in which they are imprisoned.").

In *Porter*, the Supreme Court addressed the phrase "prison conditions" in § 1997e(a) and determined that it "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." 534 U.S. at 532. *Porter* did not provide a geographical dimension to this holding and did not cabin its reach. Rather, *Porter* held: "We here read the term 'prison conditions' not in isolation, but 'in its proper context.' The PLRA exhaustion provision is captioned 'Suits by prisoners'; this unqualified heading scarcely aids the argument that Congress meant to bi-sect the universe of prisoner suits." *Id.* at 527–28 (citations omitted).

Estrada's appeal also runs contrary to another holding in *Porter*. In his Reply Brief, he claims that "construing the text to impose a temporal limit (rather than a geographical limit) does not withstand scrutiny." Reply Br. at 10. But *Porter* held that it is "plausible that Congress inserted 'prison conditions' into the exhaustion provision simply to make it clear that preincarceration claims fall outside § 1997e(a), for example, a § 1983 claim against the prisoner's arresting officer." 534 U.S. at 518. Although the

21

temporal test may limit the statute's reach, nothing indicates that Congress intended courts to add a geographic limitation.

**C**

Another reason we determine the PLRA's scope broadly is because narrowing it to only apply within the prison walls would subvert a major purpose of the PLRA: to improve the overall conditions of confinement by drawing immediate attention to prisoner treatment issues as they occur. Rapid reporting allows corrections officers and officials to address problems quickly, not months or years later following the outcome of a lawsuit.

For example, in this case, if Estrada had timely pursued the three-step grievance process regarding the courthouse shooting, he would have alerted prison officials that CDOC officers perhaps need additional training on the appropriate tactics and means to prevent prisoners in custody from escaping a courthouse. Or, at the very least, his grievances would have drawn CDOC's attention to Smart, who shot a fully restrained prisoner three times without any attempt to use a taser or other lesser force. Estrada's unwarranted shooting "by a corrections officer may be reflective of a systemic problem traceable to poor hiring practices, inadequate training, or insufficient supervision." *Id.* at 530; *see also Ruggerio*, 467 F.3d at 178 (explaining the importance of the "larger interests at stake under the PLRA" beyond the prisoner's federal lawsuit).

22

Carving out a wide exception for all incidents that happen anywhere beyond the boundary of a prison would unravel the PLRA's blanket coverage. As oral argument in this case demonstrated, these gaps in coverage would cover far more than courthouse shootings. When pressed, Estrada's counsel could not defend an objective test based on geography (and, in fact, disclaimed proposing a geographic test for the PLRA, at one point) or refute that if we adopted Estrada's interpretation of the PLRA, all transportation of all prisoners to or from prisons would be deemed outside the zone of the PLRA. Such gaps would be significant; prisoners routinely are transported from prison to other correctional facilities, medical appointments, or courthouses.

Estrada's geography-based test is also contrary to the history and statutory context of the PLRA. *See Ross*, 578 U.S. at 640 ("So too, the history of the PLRA underscores the mandatory nature of its exhaustion regime."). Congress passed the PLRA for a variety of reasons, including to "reduce the 'disruptive tide of frivolous prisoner litigation.'" *Tuckel*, 660 F.3d at 1252 (quoting *Woodford v. Ngo*, 548 U.S. 81, 97 (2006)). The goal was "fewer and better prisoner suits." *Jones*, 549 U.S. at 203. Congress also sought "to eliminate unwarranted federal-court interference with the administration of prisons," *Woodford*, 548 U.S. at 93, and "to . . . afford[ ] corrections

23

officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525.

Requiring a prisoner to file a grievance is not a technicality; instead, it is mandatory to ensure prison "efficiency" and "administrative agency authority" by allowing prison officials to promptly review incidents and gather evidence, as well as maintain control over the flow of prison life. *Woodford*, 548 U.S. at 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Administrative exhaustion alerts prison officials to problems as they occur, avoiding delays and the loss or destruction of evidence. Exhaustion also gives an agency the "'opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" *Id.* (quoting *McCarthy*, 503 U.S. at 145).

As a result, if a prisoner later files a federal lawsuit, the parties and the court will have a developed factual record. *See id.* at 95 (explaining that "proper exhaustion often results in the creation of an administrative record that is helpful to the court [because] [w]hen a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved"). From a prisoner's perspective, administrative exhaustion plays a critical role in gathering and preserving critical evidence.

We also must consider the statutory evolution of administrative exhaustion. The PLRA "differs markedly from its predecessor." *Porter*, 534 U.S. at 524. In passing the PLRA, Congress "invigorated" the exhaustion requirement. *Woodford*, 548 U.S. at 84 (quoting *Porter,* 534 U.S. at 524). Prior to 1980, prisoners faced "no obligation to exhaust administrative remedies." *Id.* Congress then initially "enacted a weak exhaustion provision" that was "in large part discretionary" and "authorized district courts to stay actions . . . for a limited time while a prisoner exhausted 'such plain, speedy, and effective administrative remedies as are available.'" *Id.* (quoting § 1997e(a)(1) (1994 ed.)).

"[T]he new § 1997e(a) removed the conditions that administrative remedies be 'plain, speedy, and effective' and that they satisfy minimum standards." *Ross*, 578 U.S. at 641 (quoting *Porter*, 534 U.S. at 524). We must acknowledge that "[w]hen Congress amends legislation, courts must 'presume it intends [the change] to have real and substantial effect.'" *Id.* at 641–42 (quoting *Stone v. INS*, 514 U.S. 386, 397 (1995)). Thus, because Congress' intent in passing the PLRA was to broaden and strengthen administrative exhaustion, we decline to exclude the courthouse shooting from the reach of the PLRA.

For all these reasons, we hold that the PLRA's exhaustion requirement applies to the May 2018 courthouse shooting of a CDOC inmate by a CDOC officer.

**VI**

We now turn to the scope of the CDOC grievance procedures. Ultimately, we must decide whether AR 850-04 applies to a courthouse shooting, because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

The district court ruled that to plead a federal lawsuit based on the courthouse shooting, Estrada was first required to file Steps 1, 2, and 3 grievances about the shooting, as set forth in CDOC's AR 850-04. In this case, like in *Jones*, which analyzed administrative exhaustion within the Michigan Department of Corrections, AR 850-04 "describes what issues are grievable[.]" *Jones*, 549 U.S. at 206–07. Thus, AR 850-04 defines the scope of the CDOC grievance procedures.

Here is the language in AR 850-04 that determines whether the three-step grievance procedures applied to Estrada's courthouse shooting:

26

| CHAPTER | SUBJECT | AR # | Page 4 |
|---|---|---|---|
| Offender Personnel | Grievance Procedure | 850-04 | 11/15/17 |

D. Grievance Substance and Format:

    1. Offenders will be entitled to invoke this grievance procedure for a broad range of complaints including, but not limited to: policies, conditions, and incidents within the facility that affect the offender personally; actions by employees and offenders and *for resolving offender issues relating to health care concerns [4-4394]*.

    2. This grievance procedure **may not** be used to seek review of the following:

        a. Code of Penal Discipline convictions, restrictive housing placement, Parole Board decisions, and decisions of the Reading Committee have exclusive appeal procedures.

        b. Classification is entirely at the discretion of the administrative head and internal classification committee of each facility.

        c. Sex offender designation and sentence computation arise from judicial proceedings involving individual offenders and require judicial review and adjustments.

        d. Parole Board Appeals, if available, are governed by the enacted Rules and Regulations of the parole board.

        e. Sentence computation.

        f. Decisions of the Step 3 grievance officer.

        g. Requests for records pursuant to the Colorado Open Records Act and the Criminal Justice Records Act may not be made using the grievance process. Allegations of improper denial of an open record request are not grievable. The statue provides the mechanism for relief in these cases.

        h. Facility placement, unit, cell and bunk assignment (including protective custody as those decisions are guided by AR 650-02, *Protective Custody*)

        i. Security threat groups (STG) status

Aplt. App'x at 123 (highlight added).

In analyzing this language, the district court provided four reasons why the courthouse shooting is within the scope of AR 850-04. The first three reasons are based on the highlighted language above, and the fourth is based on nearby language in AR 850-04:

1. **Including But Not Limited To**. *First*, "AR 850-04 explicitly states that the grievance procedure includes issues that occur within the facility, but is *not limited to* them."

2. **Employees' Actions**. *Second*, "the phrase 'actions by employees and offenders' is not placed within the previous portion of the paragraph which describes incidents within the facility, indicating that employees' actions need not necessarily occur within the facility to be covered by AR 850-04."

3. **Not Listed as an Exclusion**. *Third*, the list of exclusions included in AR 850-04 "notably does not include incidents occurring outside the prison, quite clearly implying that the procedure *is* available for such incidents."

4. **Covers Offenders Outside the Facility**. *Fourth*, "[Smart] points out that CDOC policy does mention covering incidents outside the facility in the context of who the grievance procedure is made available to in AR 850-04(IV)(A)(2). To wit, the AR provides that '[t]he grievance procedure is available only to offenders sentenced to the [C]DOC. This includes [C]DOC offenders housed in private facilities and offenders who have been released to parole, community, or ISP supervision.'" (citation omitted).

Aplt. App'x at 197, 204.

We conclude that the district court's analysis of the scope of the CDOC regulations is reasonable. The fourth point, on its own, disproves Estrada's repeated assertion that nothing suggests the CDOC procedures apply outside the prison walls.

The Supreme Court has advised that "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Ross*, 578 U.S. at 644. In *Ross*, the Supreme Court expressly held that "new § 1997e(a)

28

removed the conditions that administrative remedies be 'plain, speedy, and effective' and that they satisfy minimum standards." *Id*. at 641 (quoting *Porter*, 534 U.S. at 524). As a result, a prisoner is not excused from the duty to exhaust all administrative remedies by pointing to a "reasonable mistake about the meaning of a prison's grievance procedures." *Id*.; *see also Porter*, 534 U.S. at 525 n.4 ("[T]he PLRA establishes a different regime. For litigation within § 1997e(a)'s compass, Congress has replaced the 'general rule of non-exhaustion' with a general rule of exhaustion.").

Applied to this case, the Supreme Court's dual guidance in *Ross* and *Porter* is dispositive. The district court's inquiry was not to choose who, as between Estrada and Smart, offered a better interpretation of AR 850-04. Instead, under controlling Supreme Court law, Estrada was required to show that it would be *unreasonable* to apply CDOC's three-step grievance procedures to the courthouse shooting. *Ross*, 578 U.S. at 641, 644. This is a more difficult showing, and Estrada failed to make it. The district court pointed to four reasons why it is reasonable to apply AR 850-04 to the courthouse shooting, and we affirm this "reasonable interpretation of the grievance requirements." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010).

Ultimately, we affirm the district court's entry of summary judgment. We agree that, because Estrada failed to exhaust his § 1983 claim regarding

the courthouse shooting by following CDOC's three-step grievance process, his claim was barred.

## VII

Estrada makes a final argument that we decline to reach. Trying to expand what he argued in response to the summary judgment motion, Estrada argues on appeal that his claim was not subject to the PLRA based on an exception. He did not make this argument below. We acknowledge a "built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'" *Ross*, 578 U.S. at 635–36. This "unavailability" of administrative remedies exception can take three forms:

1. **Dead end**: if the administrative process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates";

2. **Opaqueness**: if it is so "opaque that it becomes, practically speaking, incapable of use"; and

3. **Threats or Intimidation**: if prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Id.* at 643–44; *see also May*, 929 F.3d at 1234 (same).

Estrada claims on appeal that the opaqueness exception applies here, because no prisoner, including him, could determine that AR 850-04 applied to a courthouse shooting. But this new argument was never presented to the district court, and we decline to reach it. As we have repeatedly held,

we "deem arguments that litigants fail to present before the district court but then subsequently urge on appeal to be forfeited." *Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1259 (10th Cir. 2018). The district court specifically noted that it did not analyze opaqueness because Estrada did not argue it. Aplt. App'x at 208.

In addition, failure to argue plain error on appeal waives the issue. *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) ("When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise."). In this case, Estrada argued plain error on appeal, but he waited until the reply brief, affording Smart no opportunity to respond. We "need not decide whether" raising plain error for the first time in a reply "avoids waiver because [Estrada's] argument is insufficient." *Hayes v. SkyWest Airlines, Inc.*, 12 F.4th 1186, 1201 (10th Cir. 2021). Estrada fails to show it is "clear or obvious that the district court should have" applied the opaqueness exception when he "did not present" this argument – or any probative evidence supporting it – at summary judgment. *Id.*

## VIII

The district court's entry of summary judgment against Estrada is AFFIRMED.

31