In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-1017

HENRY JONES,

*Plaintiff-Appellant,*

*v.*

AMANDA LAMB,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 21-cv-4120 — **Joe Billy McDade**, *Judge.*

ARGUED SEPTEMBER 6, 2024 — DECIDED DECEMBER 23, 2024

Before RIPPLE, SCUDDER, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* The Prison Litigation Reform Act
(PLRA) requires a prisoner to exhaust available administrative remedies before challenging his conditions of confinement in federal court. *See* 42 U.S.C. § 1997e(a). Exhaustion is
an issue of judicial administration, so district courts may resolve genuine factual disputes material to exhaustion without
the participation of a jury—but only after an evidentiary hearing. *Pavey v. Conley*, 544 F.3d 739, 741–42 (7th Cir. 2008).

In this case, Henry Jones brings two claims challenging his conditions of confinement against nurse Amanda Lamb, who raised exhaustion as an affirmative defense. Jones responded that he was unable to exhaust administrative remedies as to one of his claims—a claim that Lamb refused to provide him medical treatment—because prison officials never delivered him responses to his related grievances. Disbelieving Jones, the district court granted summary judgment to Lamb on exhaustion grounds. Because Jones's allegations raised a genuine dispute as to whether administrative remedies were available to him, the court erred by not conducting an evidentiary hearing to resolve this exhaustion dispute.

We therefore affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I. Background

Jones broke his left hand while playing an afternoon game of basketball at Henry Hill Correctional Center on July 20, 2019. In his complaint, Jones alleges that the next day, Lamb turned him away from the prison's healthcare unit without medical treatment, despite severe swelling in his hand. He also alleges that around August 25, 2019, after he underwent surgery to realign the bones in his hand, Lamb refused to provide him pain medication.

Prior to his federal suit, Jones filed three grievances related to these claims: two grievances related to his medical treatment claim and one grievance related to his pain medication claim. Henry Hill is an Illinois prison, so state regulations set forth the applicable grievance procedures. On July 21, 2019, in accordance with the standard process for filing grievances, Jones filed a grievance addressed to his institutional

counselor complaining of Lamb's alleged refusal to treat his hand injury. *See* Ill. Admin. Code tit. 20, § 504.810. His counselor responded in September, noting that by that time, Jones had obtained medical treatment. Two weeks later, a grievance officer received Jones's grievance for review. An Illinois regulation provides that a grievance officer "shall" review a grievance and report written findings and recommendations to the warden within two months of receipt "when reasonably feasible under the circumstances." Admin. § 504.830(e). The grievance officer assigned to Jones's July 21 grievance took seven months to issue a recommendation to deny the grievance. Six days later, on April 30, 2020, the warden concurred.

On August 20, 2019, while awaiting a response from his counselor to his earlier grievance, Jones reiterated his complaints about Lamb (and raised new ones unrelated to this case) in an emergency grievance he sent directly to the warden. The warden decided to expedite processing of this grievance and apparently forwarded it to a grievance officer for initial review. *See* Admin. §§ 504.840(a)–(b) (providing for expediting processing if there is a substantial risk of serious or irreparable harm). Five months later, in January 2020, the grievance officer recommended denying Jones's grievance. On January 23, 2020, the warden concurred.*

---

[*] Jones filed his August 20 grievance twice. As Jones explains, he filled in a grievance form; made a copy, which he marked as such and sent to the warden; wrote his institutional counselor asking for confirmation that the warden had received his grievance; and hearing nothing back from his counselor, sent the original grievance to the warden later in the day. Prison officials processed these grievances separately, and the warden decided to expedite processing of the first-filed grievance (the copy) but not the

Lastly, on August 25, 2019, Jones sent an emergency grievance to the warden complaining of Lamb's alleged refusal to provide him pain medication—the only grievance related to his pain medication claim. The warden declined to process this grievance on an emergency basis, and prison officials returned it to Jones with instructions to resubmit it in accordance with the standard process. *See* Admin. § 504.840(c).

Without pursuing his grievances any further, aside from requests for status updates while they were pending, Jones filed this suit on July 19, 2021. Prior to filing suit, Jones did not appeal the warden's decisions regarding his July 21 and August 20 medical treatment grievances, although an Illinois regulation provides that a prisoner dissatisfied with a warden's resolution of his grievance may appeal the warden's decision to the director of the Illinois Department of Corrections (IDOC) within thirty days. Admin. § 504.850. And Jones never resubmitted his August 25 pain medication grievance.

Lamb moved for summary judgment on the grounds that Jones had failed to exhaust his administrative remedies. In response, Jones asserted that he never received the warden's decisions regarding his medical treatment grievances until discovery in this case—which is why he failed to appeal those

---

second-filed grievance (the original). Prison officials returned the second-filed grievance to Jones with instructions to resubmit it in accordance with the standard process, which Jones did not do. Lamb's exhaustion argument here turns on Jones's failure to administratively appeal the warden's decision regarding his first-filed August 20 grievance—not his failure to resubmit the identical second-filed grievance. Therefore, we do not mention Jones's second-filed grievance outside this footnote.

grievances. Jones offered no explanation for his failure to re-submit his pain medication grievance.

The district court granted Lamb's motion, concluding that Jones had unexhausted administrative remedies available to obtain relief on both his claims against Lamb. The court acknowledged Jones's assertion that "he did not receive his [July 21] grievance back." The court, however, found this assertion "not credible" because Jones had attached his counselor's September 2019 response to his complaint—and the court found it contradicted Jones's story. The court did not address Jones's assertion that prison officials also had failed to return his August 20 grievance to him.

## II. Discussion

We review a district court's decision to grant summary judgment de novo. *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023). Summary judgment on a claim or defense is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In this case, Lamb moved for summary judgment on an affirmative defense: failure to exhaust under the PLRA. *See Jones v. Bock*, 549 U.S. 199, 212 (2007). Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under [federal law] by a prisoner … until such administrative remedies as are available are exhausted." This provision mandates a prisoner to "complete the administrative

review process in accordance with the applicable procedural rules … as a precondition to bringing suit in federal court," *Woodford v. Ngo*, 548 U.S. 81, 88 (2006), so long as that process is available to the prisoner, *Ross v. Blake*, 578 U.S. 632, 642 (2016). In this case, the applicable procedural rules come from Illinois regulations, which contain instructions for filing and processing grievances and administrative appeals. *See Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) ("[T]he rules come from the prison grievance systems themselves[.]"); *see also Jones*, 549 U.S. at 218. Grievance procedures and administrative appeals are available—so a prisoner must exhaust those remedies—if they "are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

To succeed on a motion for summary judgment based on an affirmative defense, the defendant "must lay out the elements of the [defense], cite the facts which [the defendant] believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the [plaintiff] on the [defense]." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). As we have applied Rule 56 in the exhaustion context, a defendant prison official must demonstrate that the plaintiff prisoner failed to exhaust the applicable grievance procedures and that those procedures were available to him as a matter of law. *See Smallwood*, 59 F.4th at 315; *see also Lamb v. Kendrick*, 52 F.4th 286, 295 (6th Cir. 2022) (justifying this approach).

Exhaustion is a claim-specific inquiry. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). Therefore, as follows, we consider Jones's two claims separately.

**A. Medical Treatment Claim**

Lamb's defense as to Jones's claim that she refused to treat his initial injury rests on his failure to appeal the warden's decisions regarding his July 21 and August 20 grievances to the IDOC's director. Whether the district court properly granted summary judgment on Lamb's defense depends on whether she demonstrated that administrative appellate review was available to Jones as a matter of law.

In *Ross*, the Supreme Court identified examples of circumstances when an administrative procedure is unavailable, including "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." 578 U.S. at 643. When prison officials fail to timely respond to a prisoner's grievances, for example, administrative remedies are unavailable. *See Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (reversing summary judgment for prison officials when they failed to respond to the prisoner's grievances within the time proscribed in the grievance policy or notify him of a delay); *Lewis*, 300 F.3d at 833; *see also Small v. Camden Cnty.*, 728 F.3d 265, 273 (3d Cir. 2013) (collecting *Lewis* and cases from three sister circuits).

In this case, the warden responded to Jones's July 21 and August 20 grievances, but Jones asserts that prison officials failed to deliver those responses to him within the timeframe for an appeal. If true, Jones reached a dead end under *Ross* and the PLRA does not preclude his claim. The question the district court needed to answer at summary judgment—which we consider here—is whether disputed issues of material fact precluded summary judgment.

At summary judgment, a party asserting that a fact is gen-
uinely disputed—here, the availability of administrative rem-
edies—must support the assertion. The party can do so by
"citing to particular parts of materials in the record, including
… affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A). An
unsworn declaration subscribed as true by the declarant un-
der penalty of perjury may support an assertion if the decla-
ration is "made on personal knowledge, set[s] out facts that
would be admissible in evidence, and show[s] that the … de-
clarant is competent to testify on the matters stated." Fed. R.
Civ. P. 56(c)(4); 28 U.S.C. § 1746.

Jones complied with these requirements. In support of his
argument that availability is disputed, he cited to his declara-
tion, in which he asserted based on personal knowledge that
he failed to receive the warden's decisions regarding his
grievances. In a separate attachment, he attested to the truth-
fulness of the assertions in his declaration.

We reject Lamb's attempt to denigrate Jones's declaration
as self-serving. Testimony is often self-serving. At summary
judgment, the district court could not disregard Jones's dec-
laration merely because it served his interests. *Durukan Am.,
LLC v. Rain Trading, Inc.*, 787 F.3d 1161, 1164 (7th Cir. 2015)
("In the summary judgment context, 'we long ago buried—or
at least tried to bury—the misconception that uncorroborated
testimony from the non-movant cannot prevent summary
judgment because it is "self-serving."'" (quoting *Berry v. Chi.
Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010))).

We similarly reject Lamb's argument that Jones's asser-
tions did not create a genuine dispute as to availability be-
cause they contradict objective evidence. True, "[w]hen op-
posing parties tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The district court concluded that the September 2019 response by Jones's institutional counselor to his July 21 grievance contradicted his story. But this response says nothing about whether Jones received the warden's decision, which the warden issued eight months later. Likewise, the notice that a grievance officer received Jones's July 21 grievance in September 2019, after his counselor's response (Jones attached this notice to his complaint), and the absence of follow-up by Jones about his July 21 grievance after March 2020, did not contradict his story. Accordingly, *Scott* does not apply. *See Pyles v. Nwaobasi*, 829 F.3d 860, 868 (7th Cir. 2016) (describing similar evidence as "at best very weak").

For these reasons, we conclude that a genuine dispute existed as to whether an administrative appeal was available to Jones to obtain relief on his claim that Lamb refused to treat his hand injury on July 20, 2019. This dispute, which turns on whether Jones received the warden's responses to his July 21 or August 20, 2019, grievances, was material to exhaustion. Therefore, the district court erred in granting summary judgment on exhaustion related to these two grievances.

**B. Pain Medication Claim**

The only grievance related to Jones's claim that Lamb refused to provide him pain medication is his August 25, 2019, emergency grievance. Jones does not contest that he received a response from prison officials directing him to resubmit this grievance in accordance with the standard process—indeed, Jones attached the response to his complaint. Nor does Jones

contest that he failed to resubmit the grievance. Thus, the record shows beyond dispute that he had a procedure capable of use to obtain relief on his claim, which he failed to exhaust.

Because unexhausted administrative remedies were available to Jones as to his claim that Lamb refused to provide him pain medication, the district court properly granted summary judgment to Lamb on this claim.

*        *        *

For the foregoing reasons, Jones's claim that Lamb refused to treat his initial hand injury—and only this claim—survives Lamb's motion for summary judgment. On remand, the district court must conduct an evidentiary hearing to resolve the exhaustion dispute related to this claim, which turns on the truth of Jones's assertions that he failed to receive the warden's decisions regarding his July 21 and August 20, 2019, medical treatment grievances until discovery in this case.

Because exhaustion is an issue of judicial administration, a court may resolve factual issues related to exhaustion without the participation of a jury. *Pavey*, 544 F.3d at 741–42; *see also Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir. 2024), *cert. granted*, No. 23-1324, 2024 WL 4394132 (Oct. 4, 2024); *Estrada v. Smart*, 107 F.4th 1254, 1262 (10th Cir. 2024); *Albino v. Baca*, 747 F.3d 1162, 1170–71 (9th Cir. 2014); *Small*, 728 F.3d at 269–271; *Messa v. Goord*, 652 F.3d 305, 308–09 (2d Cir. 2011); *Dillon v. Rogers*, 596 F.3d 260, 272–73 (5th Cir. 2010); *Bryant v. Rich*, 530 F.3d 1368, 1373–77 (11th Cir. 2008). Under our precedent, however, where a material factual dispute exists, a district court can only resolve an exhaustion dispute after an evidentiary hearing. *See Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) ("If … a prisoner raises 'sufficient factual allegations

demonstrating a genuine dispute as to whether the administrative remedies were available to him,' a court must conduct an evidentiary hearing pursuant to *Pavey* … to resolve the dispute." (quoting *Smallwood*, 59 F.4th at 318)); *Wagoner v. Lemmon*, 778 F.3d 586, 588 (7th Cir. 2015) ("Often exhaustion (or its lack) will be apparent, but when it is not, the district court must hold an evidentiary hearing to resolve the question."); *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("[A] judge can resolve an issue of exhaustion, like other threshold issues (such as jurisdiction), himself, in order to avoid multiple trials in the same case. But he can do that only after conducting an evidentiary hearing."); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2416 (3d ed. 2002) (when questions of fact or credibility predominate, a court's decision not to hear oral testimony on a motion is often an abuse of discretion).

At its discretion, the court may also permit additional discovery related to exhaustion. *See Pavey*, 544 F.3d at 742.

*     *     *

The judgment of the district court is

AFFIRMED IN PART AND REVERSED IN PART.