FILED
United States Court of Appeals
Tenth Circuit

June 28, 2016

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

---

JAMES NELSON, and ELIZABETH
VARNEY,

        Plaintiffs-Appellees,

v.

UNITED STATES OF AMERICA,

        Defendant-Appellant.

No. 14-1322

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:11-CV-02953-WYD-CBS)**

---

Joshua M. Salzman, Attorney, Appellate Staff, Civil Division (Joyce R. Branda, Assistant Attorney General, John F. Walsh, United States Attorney for the District of Colorado, Beth S. Brinkman, Deputy Assistant Attorney General, and Mark B. Stern, Attorney, Appellate Staff, Civil Division, with him on the briefs), United States Department of Justice, Washington, D.C., for Appellant.

Robert Fishman, Ridley, McGreevy & Winocur (David P. Hersh, Diane Vaksdal Smith, and Steven G. Greenlee, Burg Simpson Eldredge Hersh & Jardine, P.C., Englewood, Colorado, with him on the brief), Denver, Colorado, for Appellees.

---

Before **TYMKOVICH**, Chief Judge, **GORSUCH**, and **McHUGH**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

James Nelson was seriously injured bike riding when he encountered a sinkhole on a bike path on United States Air Force Academy land. He sued under the Federal Tort Claims Act for damages and was awarded over $7 million. The government contends that it is immune from liability under the Colorado Recreational Use Act, Colo. Rev. Stat. § 33-41-101 *et seq.*, which limits the liability of landowners who allow the use of their property for recreational purposes. We agree that under the Recreational Use Act Mr. Nelson was a permissive user of the bike path and the Academy is therefore not liable for its negligent maintenance of the path.

Accordingly, we REVERSE the district court's judgment and REMAND for further proceedings.

## I. Background

Mr. Nelson was a regular user of a bicycle path located on property that is part of the United States Air Force Academy. While riding in the fall of 2008, he struck a large sinkhole and severely injured himself.

Two signs existed near the path's entrance. The first sign, not especially conspicuous, was erected by the Academy and informed visitors that entry was illegal without permission. The second sign—located closer to the path's entrance and easier for bikers to read—stated, "Bicycle Path, No Motorized Vehicles." The Academy did not erect the "Bicycle Path" sign, nor do they know who did or when. But the sign was displayed for at least as long as Mr. Nelson

-2-

had been using the path.  Prior to the accident, in 2007, the Colorado Department of Transportation emailed the Academy and offered to remove the sign, which was near the right-of-way on Interstate 25 as the highway crosses Academy property.  The Academy, however, never responded to this email and the sign remained in place until Mr. Nelson's accident the following year.  After the accident, the Academy closed the path.

Mr. Nelson and his wife sued the United States under the FTCA for his injuries and his wife's loss of consortium.  After a bench trial the district court found the United States liable and awarded the plaintiffs damages.  The district court made several findings of fact and conclusions of law relevant to this appeal.

First, the district court found the Academy knew the path was used for recreational purposes such as jogging and biking.  In addition, the Academy considered bike path users trespassers on Academy land.  Nonetheless, the Academy never confronted recreational users or prevented them from using the path.  The district court also found that the Academy did not intend for the path to be a recreational trail open to the public.

Based on these findings, the district court held the Academy could not take advantage of the limitations on liability under the Recreational Use Act because the Academy had not intended to open the path for public recreational use.  And since the Academy knew bikers were using the path and was aware of the

sinkhole, it breached its duty of care by failing to repair the sinkhole or warn users of the risk.

## II. Analysis

In FTCA cases, we review the district court's determination of state tort law de novo. *Ayala v. United States*, 49 F.3d 607, 611 (10th Cir. 1995). The Colorado Supreme Court has not yet addressed the central issue in this case. When faced with unsettled issues of state law, federal courts should predict how the state's highest court would interpret the issue. *See Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 852 (10th Cir. 2015). The government contends it is entitled to the protections of the Colorado Recreational Use Act. As we explain, that law protects landowners, including the United States government, who knowingly permit recreational uses on their property.

### A. Colorado Law

Colorado, like nearly every state, has adopted a recreational use statute protecting landowners who open their land for public recreational use from liability for injuries. Under the Act, "the owner of land who either directly or indirectly invites or permits, without charge, any person to use such property for recreational purposes" will not be responsible for "any injury to person or property . . . caused by an act or omission" of the landowner. Colo. Rev. Stat. § 33-41-103. But liability will not be limited for a landowner's "willful and

malicious failure to guard or warn against a known dangerous condition . . . likely to cause harm." *Id.* § 33-41-104.[1]

If a landowner is not entitled to protection under the Recreational Use Act, his liability depends on the status of users of his property. Under the Colorado Premises Liability Act, landowners can be liable to users they invite on their land for personal or commercial purposes. Under this Act, a landowner can be liable to an "invitee," who is a person that "enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or

---

[1] In more detail, the Colorado Recreational Use Statute provides:

> (1) Subject to the provision of section 33-41-105, an owner of land who either directly or indirectly invites or permits, without charge, any person to use such property for recreational purposes does not thereby:
>
> (a) Extend any assurance that the premises are safe for any purpose;
>
> (b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed;
>
> (c) Assume responsibility or incur liability for any injury to person or property or for the death of any person caused by an act or omission of such person.

The statute further provides, however, that "[n]othing in this article limits in any way any liability which would otherwise exist [f]or willful or malicious failure to guard or warn against a known dangerous condition, use, structure, or activity likely to cause harm . . . ." Colo. Rev. Stat. § 33-41-104(a).

remain." Colo. Rev. Stat. § 13-21-115. Landowners owe invitees the highest duty of care.

Other types of users are entitled to lesser protections. For example, a "licensee" is a person "who enters or remains on the land of another for the licensee's own convenience or to advance his own interests, pursuant to the landowner's permission or consent. 'Licensee' includes a social guest." *Id.* Licensees are owed a less demanding duty of care—they can recover only for a landowner's "unreasonable failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually knew," or his "unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type involved and of which the landowner actually knew." *Id.*

Finally, a "trespasser" is "a person who enters or remains on the land of another without the landowner's consent." *Id.* "A trespasser may recover only for damages willfully or deliberately caused by the landowner." *Id.*[2]

---

[2] The Premises Liability Act states, in relevant part:

> (3)(a) A trespasser may recover only for damages willfully or deliberately caused by the landowner.
>
> (b) A licensee may recover only for damages caused:
> (I) By the landowner's unreasonable failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually knew; or
> (II) By the landowner's unreasonable failure to warn of

(continued...)

### B. *Application*

The Academy contends it is shielded from Mr. Nelson's tort claims under the Recreational Use Act because it knew the bike path was being used by the public and took no steps to block such usage. For purposes of the Act, the Academy therefore "indirectly permitted" Mr. Nelson's use for recreational purposes. The district court disagreed, finding the Act did not apply because the Academy did not intend trespassers to use the path. The court instead found that Mr. Nelson was an invitee under the Colorado Premises Liability Act and thus the Academy owed him a duty to reasonably maintain the bike path. And because the Academy did not fulfill this duty, Mr. Nelson could recover for damages caused by the dangerous condition.

We agree with the Academy that Mr. Nelson was a permissive user under the Recreational Use Act. First, the Act extends protection to any person the landowner "directly or indirectly invites or permits" to use property for

---

[2](...continued)
> dangers not created by the landowner which are not ordinarily present on property of the type involved and of which the landowner actually knew.
>
> (c)(I) Except as otherwise provided in subparagraph (II) of this paragraph (c), an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known.

Colo. Rev. Stat. 13-21-115(3).

recreational purposes.  Under Colorado law, "permission" is defined as "conduct that justified others in believing that the possessor of property is willing to have them enter if they want to do so." *Corder v. Folds*, 292 P.3d 1177, 1180 (Colo. App. 2012) (quoting Black's Law Dictionary (9th ed. 2009)).  The parties do not contend the Academy *directly permitted* use of the path—in fact, the Academy considered users of the bike path to be trespassers on its property.

But the district court's fact findings confirm that Mr. Nelson was *indirectly permitted* to use the bike path.  First of all, Academy personnel knew for many years that the public used the path for recreational purposes.  They also knew the "Bicycle Path" sign was placed near the entrance to Academy boundaries and gave the impression the path was open for general public use.  And prior to the accident the Colorado Department of Transportation offered to remove the sign, an offer the Academy ignored.  Finally, the Academy never prevented usage of the path or took steps to close it off to the public.  Together, this conduct can only be seen as indirectly permitting bikers such as Mr. Nelson to use the path for recreational purposes.

The district court disagreed with this interpretation, finding that the Academy's subjective intent—that users were "trespassers"—negated the Act's protections.  The Academy contended the Act requires an objective standard, otherwise the statutory protection for indirect permission would be read out of the Act.  A number of courts have decided cases similar to this one, and reached

-8-

different conclusions. For example, in interpreting Kentucky's recreational use statute, which was identical to Colorado's, the Kentucky Supreme Court determined that to avoid giving blanket immunity to landowners who "do[] nothing," it should read the statute narrowly and impute an intent requirement. *Coursey v. Westvaco Corp.*, 790 S.W.2d 229 (Ky. 1990). The court held that "a landowner must show he knew and condoned the public making recreational use of his property, and by the landowner's words, actions or lack of action it must be able to be reasonably inferred the landowner intended to permit such use." *Id.* at 232.

Similarly, in *Craig v. Sepulvado*, 709 So. 2d 229 (La. Ct. App. 3 Cir. 1998), the Court of Appeal of Louisiana determined that landowners who do not show an intent to allow the public to enter could not be shielded by a recreational use statute. In that case, a minor had been accidentally shot while hunting on defendant's land. The court determined that because defendant had evidenced a willingness to allow only her own grandchildren on the premises for recreational purposes, she could not take advantage of the recreational use statute.

In contrast, in *Ali v. City of Boston*, 804 N.E.2d 927, 930 (Mass. 2004), the Supreme Judicial Court of Massachusetts held that Massachusetts's recreational use statute, which protects landowners who "permit[] the public to use such land for recreational . . . purposes without imposing a charge," did not require a showing of subjective intent. *Id.* at 930. The plaintiff had been riding his bike

through a public park when he collided with a park gate and suffered injuries. He argued that his use of the bicycle was non-recreational, and thus the city could not use the recreational use statute as a shield to liability. The court disagreed, and affirmed summary judgment for the city. Because riding a bicycle was an "objectively recreational activity," and the city did not charge for entry to the park, the law shielded it from liability. *Id.* at 931. In addition, it found that conditioning liability under a recreational use statute on subjective intent "would only invite mischief and deceit." *Id.* at 932.

Along these lines, in *Stanley v. Tilcon Maine, Inc.*, 541 A.2d 951, 953 (Me. 1988), the Supreme Judicial Court of Maine, in interpreting its own recreational use statute, found that the intent of the owner is not relevant to a determination of the statute's applicability. The case concerned injuries to a child while tobogganing in defendants' sandpit. The court found that, although the landowners had not manifested any affirmative intent to allow such activities, the objective standard in the law provided them with protection against liability.

We agree with those courts finding a subjective intent requirement is not required under recreational use statutes. Instead, it is enough that the Academy's purposeful actions implicitly allowed or acquiesced in Mr. Nelson's use of the path. Its knowledge that the path was used by the general public, combined with its knowledge of the sign and its refusal to remove it, is enough to demonstrate permission under the Act. Furthermore, requiring intent for both direct and

-10-

indirect permission would read the term "indirect" out of the statute. Imputing a subjective intent requirement could also lead to varying results, based only on the supposed subjective intention of landowners.

In sum, landowners are entitled to protection by knowingly permitting recreational use of their property. Under a plain reading of the statute, the Academy "indirectly permitted" Mr. Nelson's use of the path through its conduct. It knew of the public's use of the path and declined the opportunity to end that use.

## C. Willful or Malicious Conduct

Because we find the Academy is entitled to protection under the Recreational Use Act, we reverse the district court's judgment that Mr. Nelson can recover as a licensee or invitee. The Recreational Use Act does not, however, completely eliminate liability. Liability is still possible for "willful or malicious" failure to warn.

The Academy urges us to resolve this question, arguing that several findings of fact by the district court show that no willful or malicious conduct occurred. For example, the district court found that the only government employee who knew about the sinkhole failed to report it, not out of malice, but because he believed the path was not used and, thus, that no one was in danger. The government claims this conduct alone could not be willful or malicious. Mr. Nelson counters that the district court did not adjudicate this issue, and that it

should be the first to do so.  We agree with Mr. Nelson that the district court should decide this issue in the first instance.

## III.  Conclusion

We REVERSE the district court's judgment and REMAND for further proceedings consistent with this opinion.