The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 29, 2025

## 2025COA54

**No. 23CA2197, *Kritzer v. Qwest Corp.* — Parks and Wildlife —
Colorado Recreational Use Statute — Owners of Recreational
Areas — Limitation on Landowner's Liability — Invites or
Permits**

In this civil case, plaintiffs appeal a district court's grant of
summary judgment based on the Colorado Recreational Use Statute
(CRUS), sections 33-41-101 to -106, C.R.S. 2024.  In granting
summary judgment, the district court applied CRUS and
determined that the defendant-landowner was shielded from
liability for injuries one of the two plaintiffs sustained while
bicycling over a sidewalk panel that the defendant-landowner
purportedly had an obligation to maintain.

As relevant to this appeal, CRUS grants land "[o]wner[s]," as
broadly defined in section 33-41-102(3), C.R.S. 2024, immunity
from liability for injuries incurred on their land when such owners

"either directly or indirectly invite[] or permit[], without charge, any person to use such property for recreational purposes," § 33-41-103(1), C.R.S. 2024.

A division of the court of appeals, as a matter of first impression, considers what "invites or permits" means under CRUS. Because the division concludes that the district court erred in its determination that the defendant "invited" or "permitted" recreational use of the land at issue, the division reverses the judgment and remands the case for further proceedings.

COLORADO COURT OF APPEALS           **2025COA54**

Court of Appeals No. 23CA2197
Arapahoe County District Court No. 17CV32950
Honorable Elizabeth Beebe Volz, Judge

Stuart Kritzer and Janet Kritzer,

Plaintiffs-Appellants,

v.

Qwest Corporation,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE WELLING
Kuhn and Schutz, JJ., concur

Announced May 29, 2025

Leventhal Puga Braley P.C., Jim Leventhal, Julia T. Thompson, Nathaniel E. Deakins, Bruce L. Braley, Denver, Colorado, for Plaintiffs-Appellants

Hall & Evans, LLC, Benton J. Barton, Theresa A. Vogel, Ethan E. Zweig, Denver, Colorado, for Defendant-Appellee

Burg Simpson Eldredge Hersh & Jardine, P.C., D. Dean Batchelder, Englewood, Colorado, for Amicus Curiae Colorado Trial Lawyers Association

¶ 1 Plaintiffs, Stuart and Janet Kritzer (collectively, the Kritzers), appeal the district court's grant of summary judgment in favor of defendant, Qwest Corporation. In granting summary judgment, the district court applied the Colorado Recreational Use Statute (CRUS), sections 33-41-101 to -106, C.R.S. 2024, and determined that Qwest was shielded from liability for injuries Stuart Kritzer sustained while bicycling over a sidewalk panel that Qwest purportedly had an obligation to maintain.

¶ 2 As relevant to this appeal, CRUS grants a land "[o]wner," as defined in section 33-41-102(3), C.R.S. 2024, immunity from liability for injuries incurred on their land when such owner "either directly or indirectly invites or permits, without charge, any person to use such property for recreational purposes," § 33-41-103(1), C.R.S. 2024.

¶ 3 We address, as a matter of first impression, what "invites or permits" means under CRUS. Because we conclude that the district court erred in its determination that Qwest "invited" or "permitted" recreational use of the land at issue, we reverse the judgment and remand the case for further proceedings.

## I. Background

### A. The Kritzers' Claims Against Qwest

¶ 4 In 2009, the Colorado Department of Transportation (CDOT) issued a utility facility permit to Qwest to "[b]ore and install fiber and two handholds in Cherry Hills Village" after the Cherry Creek School District hired Qwest to install fiber optic internet service to support numerous schools in the district. The utility permit stated, "[Qwest] agrees to own and maintain the installation permitted herein. The facility shall be kept in an adequate state of repair and maintained in such a manner as to cause the least interference with the normal operation and maintenance of the highway." According to Qwest's inspector for the project, the installation was completed in 2010.

¶ 5 In 2016, Stuart Kritzer was seriously injured while riding his bike in Cherry Hills Village. In 2017, the Kritzers filed suit against Qwest and the City of Cherry Hills Village. According to the Kritzers' complaint, Stuart Kritzer was riding his bike on a sidewalk next to South University Boulevard when he rode over a sidewalk panel that was in a state of disrepair. Because of the degraded

condition of the sidewalk panel, he was "ejected over the handle bars of his bicycle and onto the pavement."

¶ 6    The City of Cherry Hills Village settled with the Kritzers.

¶ 7    The Kritzers' allegations against Qwest stem from the utility facility permit that CDOT issued to Qwest regarding the parcel on which the accident occurred. According to the Kritzers, under the terms of the permit, "Qwest had a continuing obligation to repair any damage to any highway facilities, including but not limited to the sidewalk panel." The Kritzers further alleged that the sidewalk disrepair resulted from Qwest's failure to properly backfill and compact the soil and that, at the time of Stuart Kritzer's accident, Qwest "knew or should have known that the sidewalk was in a state of disrepair." The Kritzers asserted four claims for relief against Qwest, including premises liability under the Colorado Premises Liability Act (PLA), negligence, and loss of consortium.

### B.    First Grant of Summary Judgment

¶ 8    After the Kritzers brought suit, Qwest filed two motions for summary judgment. In its first motion, Qwest argued, in relevant part, that the statute of repose in the Construction Defect Action Reform Act (CDARA), section 13-80-104(1)(a), C.R.S. 2024, barred

the Kritzers' claims against it. In response, the Kritzers argued, in part, that the statute of repose didn't apply to Qwest because Qwest was in "actual possession or control" of the utility and sidewalk panel at the time of Stuart Kritzer's accident.

¶ 9 Before the district court could rule on Qwest's first motion, Qwest filed an alternative second motion for summary judgment. In the second motion, Qwest argued that it was shielded from liability because it was an owner of land that qualified for immunity under CRUS. The Kritzers responded that CRUS didn't bar their claims because Qwest wasn't an owner of land under CRUS, and, in any event, Qwest didn't invite or permit — as those terms should be understood under CRUS — anyone to use the sidewalk panel for recreational purposes. The Kritzers further argued that, even if Qwest could benefit from CRUS, that statute's exemption for willful or malicious conduct applied.

¶ 10 Soon after the Kritzers filed their response to Qwest's second motion for summary judgment, the district court issued an order granting Qwest's first motion for summary judgment. The court granted the first motion based on the application of the statute of repose under CDARA.

¶ 11    The Kritzers appealed and a division of this court reversed the district court's order as it related to Qwest and remanded the case for further proceedings. *Kritzer v. Qwest Corp.*, (Colo. App. No. 20CA0025, Oct. 7, 2021) (not published pursuant to C.A.R. 35(e)) (*Kritzer I*).

C.    Disposition of Qwest's Second Motion for Summary Judgment

¶ 12    After the case was remanded to the district court, Qwest filed a reply in support of its second motion for summary judgment. Without addressing any of the issues remanded by this court in *Kritzer I*, the district court granted Qwest's second motion for summary judgment. In its order, the district court stated, "[T]he Court concludes that where [the Kritzers] assert that Qwest is a 'landowner' under the PLA, such designation permits Qwest to invoke the limitation on liability for an owner of property pursuant to CRUS." The court then concluded that Qwest was an "owner" under CRUS and that "[w]hether or not Qwest affirmatively permitted bicycling on the sidewalk or whether or not Qwest had the authority to preclude bicyclists from using the sidewalk does not negate application of the statute." The court also concluded

5

that no disputed facts existed that could support a finding that the willful or malicious conduct exemption to CRUS applied.

¶ 13    Following the court's grant of Qwest's second motion for summary judgment, the Kritzers filed a C.R.C.P. 59 motion for postjudgment relief.  The district court denied the motion.

¶ 14    The Kritzers now appeal the district court's order granting Qwest's second motion for summary judgment.

## II.    Issues on Appeal

¶ 15    On appeal, the Kritzers contend that the district court erred because (1) Qwest can't benefit from CRUS because it isn't an "owner of land" under CRUS and it didn't have the authority to, and therefore couldn't, directly or indirectly invite or permit Stuart Kritzer to use the sidewalk panel; (2) the CDOT permit imposed an independent legal duty on Qwest to maintain and repair the sidewalk panel, and this duty isn't extinguished by CRUS; and (3) even if Qwest could benefit from CRUS, the willful or malicious exception to CRUS applies.

¶ 16    We first address the Kritzers' contention that Qwest didn't have the authority to invite or permit Stuart Kritzer to use the land. Because we agree with the Kritzers on this issue, we conclude that

6

the district court erred in determining that CRUS shields Qwest from liability. Because that conclusion alone necessitates reversal of the district court's order for summary judgment, we don't reach the Kritzers' remaining claims.

### III. Whether CRUS Shields Qwest from Liability

#### A. Relevant Provisions of CRUS and Its Relationship to the PLA

¶ 17 The purpose of CRUS "is to encourage owners of land to make land and water areas available for recreational purposes." § 33-41-101. It does so by extending liability protection to owners of land who permit or invite members of the public to freely use their land for recreational purposes. *Id.*

¶ 18 To begin, CRUS defines an "owner" of land quite broadly. Under CRUS an owner of land includes one who has a fee interest; is a tenant, lessee, or occupant; or possesses "any other interest" in the land at issue. § 33-41-102(3)(a)-(c).

¶ 19 In turn, "an owner of land who either directly or indirectly invites or permits, without charge, any person to use such property for recreational purposes does not thereby . . . [a]ssume responsibility or incur liability for any injury to person or property

7

or for the death of any person caused by an act or omission of such person." § 33-41-103(1)(c); *cf.* § 33-41-104(1)(a), C.R.S. 2024 (CRUS doesn't protect an owner of land from liability "[f]or willful or malicious failure to guard or warn against a known dangerous condition.").

¶ 20 But if an owner of land "is not entitled to protection under [CRUS], his liability depends on the status of users of his property." *Nelson v. United States*, 827 F.3d 927, 930 (10th Cir. 2016). The PLA allows for an injured party to recover against a landowner based upon the injured party's status as a trespasser, licensee, or invitee. § 13-21-115(2)(a), (4)(a)-(c), C.R.S. 2024. Of these statuses, a landowner owes an invitee "the highest duty of care." *Nelson*, 827 F.3d at 931.

¶ 21 Thus, determining whether a defendant is protected by CRUS involves two steps: (1) determining whether the defendant is an "owner" of land under section 33-41-102(3); and, if the defendant is an owner of land, (2) determining whether the defendant "invite[d] or permit[ted], without charge," anyone to use the land at issue for recreational purposes under section 33-41-103(1). Accordingly, for Qwest to be entitled to immunity under CRUS, Qwest must satisfy

*both* conditions; in contrast, Qwest isn't entitled to summary judgment on immunity under CRUS if either condition isn't satisfied as a matter of law.

### B. Standard of Review and Preservation

¶ 22    We review a district court's grant of summary judgment de novo and apply the same standard as the district court. *S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC*, 2019 COA 58, ¶ 11. Summary judgment is appropriate only "when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.* at ¶ 12. The "burden of establishing the nonexistence of a genuine issue of material fact" is on the party moving for summary judgment. *Univ. of Denver v. Doe*, 2024 CO 27, ¶ 8. But "[t]he party opposing summary judgment . . . is entitled to the benefit of all favorable inferences that may reasonably be drawn from the facts." *Id.*

¶ 23    Qwest contends that several of the arguments the Kritzers advance on appeal are unpreserved because they didn't make the identical argument to the district court. Examples Qwest identifies include the Kritzers' arguments about the ambiguity of CRUS, specific contentions regarding the nature of Qwest's interest in the

land at issue, and their effort to distinguish an Oregon Supreme Court case — *McCormick v. State*, 466 P.3d 10 (Or. 2020) — interpreting Oregon's recreational immunity statute.  We conclude, however, that the Kritzers properly preserved the issues that we address in this opinion.  In the district court, the Kritzers asserted that Qwest wasn't an owner of land under CRUS and that Qwest didn't directly or indirectly invite or permit Stuart Kritzer to use the sidewalk panel because Qwest had no right to exclude him from the land.  And the district court had an opportunity to rule on these arguments.  *See Dill v. Rembrandt Grp., Inc.*, 2020 COA 69, ¶ 24 ("To preserve an issue for appeal, all that is necessary is that the issue 'be brought to the attention of the trial court and that the court be given an opportunity to rule on it.'" (quoting *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010))).

¶ 24    We review issues of statutory interpretation de novo.  *See Colo. State Bd. of Educ. v. Brannberg*, 2023 CO 11, ¶ 15.  And when construing a statute, we strive "to give effect to the General Assembly's intent by according words and phrases their plain and ordinary meanings."  *State Farm Mut. Auto. Ins. Co. v. Fisher*, 2018 CO 39, ¶ 12.  If "statutory language is unambiguous, our work is

complete, and we need not resort to other tools of statutory interpretation." *Miller v. Amos*, 2024 CO 11, ¶ 12. "If the statute is ambiguous, however, then we may consider 'the legislature's intent, the circumstances surrounding the statute's adoption, and the possible consequences of different interpretations to determine the statute's proper construction.'" *Educ. reEnvisioned BOCES v. Colo. Springs Sch. Dist. 11*, 2024 CO 29, ¶ 33 (quoting *Elder v. Williams*, 2020 CO 88, ¶ 18). "A statute is ambiguous when it is reasonably susceptible of multiple interpretations." *Elder*, ¶ 18.

### C. Analysis

¶ 25    As noted before, to be able to invoke CRUS as a shield on summary judgment, Qwest must establish both that it is an owner of land, § 33-41-102(3), *and* that it invited or permitted the use of that land for recreational purposes, § 33-41-103(1). We address the latter contention first, and because it's dispositive we don't reach the merits of the former contention.

#### 1. Whether Qwest Invited or Permitted Recreational Use of the Sidewalk Panel

¶ 26    The Kritzers contend that, regardless of whether Qwest is an "owner of land" under CRUS, it isn't shielded by CRUS's liability

limitation because Qwest "lacked legal right or authority to directly or indirectly permit, or charge a fee to, the public to use the sidewalk panel for recreational purposes." We agree.

### a. Meaning of "Invites or Permits"

¶ 27 The relevant portion of the immunity provision of CRUS reads as follows:

> [A]n owner of land who either directly or indirectly invites or permits, without charge, any person to use such property for recreational purposes does not thereby:
>
> (a) Extend any assurance that the premises are safe for any purpose;
>
> (b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed;
>
> (c) Assume responsibility or *incur liability for any injury to person or property . . . caused by an act or omission of such person.*

§ 33-41-103(1)(a)-(c) (emphasis added).

¶ 28 While CRUS conditions an owner's liability on whether the owner of land "invites or permits" people to use its property for recreational purposes, CRUS doesn't explicitly define either term. §§ 33-41-102, -103. Therefore, we must attempt to ascertain the plain and ordinary meaning of "invites or permits," as those words

12

are used in section 33-41-103(1).  We begin this analysis by considering the dictionary definition of "invites" and "permits."  *See People v. Harrison*, 2020 CO 57, ¶ 16 ("To ascertain the plain and ordinary meaning of a word in a statute, 'we may consider a definition in a recognized dictionary.'" (quoting *Cowen v. People*, 2018 CO 96, ¶ 14)).

¶ 29    First, we look at the word "invites."  The dictionary definition of "invites" indicates that some affirmative action on the part of the one doing the inviting is required.  Webster's, for example, defines "invite" as "to request the presence or participation of," "to provide opportunity or occasion for," or "to offer an incentive or inducement to."  Webster's Third New International Dictionary 1190 (2002).  Inherent in the definition of invite is that the inviter must take some affirmative step to entice or encourage the invitee to take some action.

¶ 30    "Permits," on the other hand, is more passive than "invites."  Black's Law Dictionary defines the verb "permit" as "[t]o give opportunity for; to make (something) happen" or "[t]o allow or admit of."  Black's Law Dictionary 1374 (12th ed. 2024).  Webster's similarly defines "permit" as "to consent to expressly or formally" or

to "grant leave for or the privilege of." Webster's Third New International Dictionary at 1683. Though more passive than "invite," permit still implies some authority to restrict. *Cf.* New Webster's Dictionary and Thesaurus of the English Language T-43 (1992) (listing antonyms for "permit" as "bar, forbid, inhibit, oppose, restrain; ban, embargo, inhibition, injunction, restriction"); *City of Colorado Springs v. Bd. of Cnty. Comm'rs*, 895 P.2d 1105, 1114 (Colo. App. 1994) (relying on antonyms of the word "significant" to assist in the understanding of its meaning). After all, how can one be said to permit something that the actor has no authority to control? *Cf.* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 46 (3d ed. 2011) ("The words *allow* and *permit* have an important connotative difference. *Allow* . . . suggests merely the absence of opposition, or refraining from a proscription. In contrast *permit* suggests affirmative sanction or approval.").

¶ 31   That "permits" in the context of CRUS requires some ability to prohibit or limit is consistent with the Tenth Circuit's analysis of CRUS in *Nelson*. In *Nelson*, a cyclist sued the Air Force Academy after he struck a sinkhole on a path located on Air Force Academy property and injured himself. 827 F.3d at 929. The *Nelson* court

concluded that the Air Force Academy wasn't liable to the cyclist under CRUS because the Air Force Academy "indirectly permitted" the cyclist to use the land. *Id.* at 933. In assessing whether the Air Force Academy permitted the cyclist to use the land, the court considered the district court's findings that the Air Force Academy "never prevented usage of the path or took steps to close it off to the public." *Id.* at 932.

¶ 32    The *Nelson* court focused on whether the Air Force Academy had the authority to exclude recreational users from the path. And it's clear from the opinion that the Air Force Academy did indeed possess that authority because it's noted that "[a]fter the accident, the Academy closed the path." *Id.* at 929.

¶ 33    Qwest, relying on *McCormick*, contends that "permits" doesn't include a right to exclude. In *McCormick*, the plaintiff sued the State of Oregon after he injured himself diving into a lake. 466 P.3d at 11. The State had built roads and "day use" areas in the park surrounding the lake, and it would have been "difficult" to access the lake without these areas. *Id.* Oregon's recreational use statute provides that an owner of land isn't liable for any tort "that arises out of the use of the land for recreational purposes . . . when the

15

owner of land *either directly or indirectly permits* any person to use the land for recreational purposes." *Id.* at 12 (quoting Or. Rev. Stat. § 105.682 (2024)) (emphasis modified). The State asserted that, under Oregon's recreational use statute, it was immune from liability because it had "permitted" the plaintiff to use the lake. *Id.* The plaintiff responded that because under Oregon law the public was entitled to use the lake (and, therefore, the State couldn't prohibit his use of it), the State didn't "permit" his use of the lake and, therefore, Oregon's recreational use statute afforded no protection. *Id.* at 12-13.

¶ 34 The *McCormick* court agreed with the State, concluding that "an owner's ability to 'permit' recreational use of its land is not contingent upon whether it can prohibit that use"; rather, an "owner can 'permit' recreational use of its land in a variety of ways, ranging from express consent to mere tolerance." *Id.* at 15.

¶ 35 Qwest urges us to follow the Oregon Supreme Court's lead and give the term "permit" in CRUS a similarly relaxed meaning. We aren't persuaded to do so for two reasons.

¶ 36 First, the two statutes are materially different. Colorado extends protection when an owner of land "*invites or* permits" use,

16

§ 33-41-103(1) (emphasis added); whereas, the Oregon statute limits protection to circumstances where the owner "permits" the use, Or. Rev. Stat. § 105.682. The gloss on the word permit adopted by the Oregon Supreme Court in *McCormick* wouldn't have been necessary had the court been applying Colorado's statute. This is so because CRUS includes the term "invites," and by building roads and "day use" areas in the park surrounding the otherwise inaccessible lake, a court could have readily concluded that the State "indirectly invite[d]" recreational use of the lake. § 33-41-103(1).

¶ 37    Second, Colorado has a longstanding and well-settled practice that "[a] statutory grant of immunity, in derogation of the common law, should be interpreted narrowly, and any exceptions to that immunity, for the protection of injured persons, should be construed broadly." *Waneka v. Clyncke*, 134 P.3d 492, 497 (Colo. App. 2005), *aff'd*, 157 P.3d 1072 (Colo. 2007); *see also, e.g.*, *Corsentino v. Cordova*, 4 P.3d 1082 (Colo. 2000) (interpreting Colorado Governmental Immunity Act); *Lin v. City of Golden*, 97 P.3d 303 (Colo. App. 2004) (same). It isn't clear that Oregon follows

17

the same interpretive practice, and regardless there is no discussion of the principle in *McCormick*.

¶ 38    Based on the foregoing, we conclude that the word "permits" in the context of section 33-41-103(1) of CRUS unambiguously requires some ability or authority on the part of the party invoking immunity to prohibit or limit in some way the use of the land for recreational purposes.

¶ 39    Moreover, the interpretation we adopt above is consistent with the purpose of CRUS, which "is to encourage owners of land to make land and water areas available for recreational purposes by limiting their liability toward persons entering thereon for such purposes." § 33-41-101.  If an owner of land who doesn't have any authority to limit or restrict a recreational user from using the land is nevertheless immunized when the land is used for that purpose, then the limited liability provided by CRUS isn't incentivizing that owner to open their land to recreational users.  Put differently, the interpretation urged by Qwest would allow an owner of land to benefit from limited liability under CRUS even though the owner isn't doing anything to further the purpose of the statute.

Considering the purpose of CRUS, we conclude that that wasn't the legislature's intent.

¶ 40    Thus, even if we were to conclude that the word "permits" in section 33-41-103(1) is ambiguous, we would reach the same conclusion regarding its meaning.

¶ 41    With this understanding of the meaning of the terms "invites" and "permits" in mind, we turn to whether the district court erred in granting summary judgment in favor of Qwest on the basis that it was immune from liability under CRUS.

### b.    Application

¶ 42    For the reasons detailed below, we conclude that Qwest didn't establish as a matter of law that it directly or indirectly invited or permitted Stuart Kritzer or anyone else to use the land for recreational purposes.

### i.    Qwest Didn't Invite Recreational Use

¶ 43    There is simply no evidence in the record that Qwest directly or indirectly invited Stuart Kritzer or anyone else to use the sidewalk panel for recreational purposes.  Qwest points to nothing in the record indicating that it took any action to entice or assist recreational users like Stuart Kritzer to use the sidewalk panel.

Rather, Qwest purportedly removed an already existing sidewalk panel and replaced it with a new one once it finished installing the fiber optic cable and handholds.

¶ 44 Notwithstanding this absence of evidence, Qwest contends that by alleging that Stuart Kritzer was an invitee under the PLA, the Kritzers effectively admitted that "Qwest expressly or impliedly invited" Stuart Kritzer to use the sidewalk panel for recreational purposes. We reject this contention for two reasons.

¶ 45 First, Qwest's argument rests on an improper conflation of the meaning of "invitee" under the PLA with "invites" under CRUS. Under the PLA, "invitee" is an injured party's status vis-a-vis the landowner. *See* § 13-21-115(2)(a); *see also Henderson v. Master Klean Janitorial, Inc.*, 70 P.3d 612, 615 (Colo. App. 2003). But under CRUS, "invites" is an action taken by an owner of land. *See* § 33-41-103(1).

¶ 46 Second, even if a plaintiff's allegation that they're an "invitee" under the PLA is tantamount to an admission that a landowner under the PLA invited recreational use of the property, such an allegation doesn't carry the automatic inference that *all* of the potential PLA landowners invited the plaintiff to use the premises.

*See Henderson*, 70 P.3d at 615-16 (concluding that (1) defendant cleaning company was a landowner under the PLA because, pursuant to its contract, it "had a legal responsibility for the condition of the stairs and was potentially liable for injuries resulting from that condition"; and (2) defendant cleaning company owed the plaintiff a duty care commensurate with that which a landowner owes to an invitee because the property owner had an obligation to maintain the property and this obligation was delegated to the cleaning company by virtue of its contract); *see also Willis v. Twin Shores Master Owner Ass'n*, 2025 COA 37, ¶ 25 ("Because an individual's status under the PLA depends on their relationship to the landowner, that status may differ as between two or more persons deemed to be landowners under the PLA.").

¶ 47  Thus, we can't conclude that Qwest established as a matter of law that it directly or indirectly invited Stuart Kritzer to use the sidewalk panel for recreational purposes.

### ii.  Qwest Didn't Permit Recreational Use

¶ 48  Viewing the facts in the light most favorable to the Kritzers, we also can't conclude that, as a matter of law, Qwest permitted Stuart Kritzer or anyone else to use the sidewalk panel for recreational

purposes. We reach this conclusion because there is no evidence in the record that Qwest had any authority under the CDOT permit or otherwise to restrict, limit, or curtail anyone's use of the sidewalk panel for recreational purposes. Qwest's bare acquiescence without any authority to do otherwise doesn't establish that Qwest directly or indirectly permitted the land at issue to be used for recreational purposes. The district court erred by concluding to the contrary.

¶ 49 For these reasons, we conclude that the district court erred by granting summary judgment in Qwest's favor on the grounds that, as a matter of law, CRUS shielded it from liability for the claims asserted by the Kritzers.

2. Whether Qwest is an Owner of Land under CRUS

¶ 50 Because we conclude that the district court erred in determining that Qwest invited or permitted recreational use of the property at issue, we don't need to — and therefore don't — resolve whether Qwest is an "owner of land" under section 33-41-102(3) of CRUS. *See Sedgwick Props. Dev. Corp. v. Hinds*, 2019 COA 102, ¶ 31 ("[W]e follow the 'cardinal principle of judicial restraint — if it is not necessary to decide more, it is necessary not to decide more.'" (quoting *Mulberger v. People*, 2016 CO 10, ¶ 23 (Gabriel, J.,

22

concurring in the judgment), in turn quoting *PDK Lab'ies Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment))).

¶ 51     Still, at oral argument, both partes invited us to resolve this issue regardless of how we resolved the "permit or invite" issue. After all, they say, the issue of whether Qwest is an owner of land may well be dispositive of the Kritzers' PLA claim, which, given our disposition of this appeal, the district court will now have to address.  But we agree with the Kritzers that a "landowner" under the PLA isn't coextensive with an "owner of land" under CRUS. Indeed, the legislature created two separate liability schemes in the PLA and CRUS and, in doing so, set forth specific and separate definitions of "owner."  *Compare* § 33-41-102(3) (defining "[o]wner" under CRUS), *with* § 13-21-115(7)(b) (defining "[l]andowner" under the PLA).  And the fact that being (or not being) an "owner of land" under CRUS doesn't resolve whether one is a "landowner" under the PLA stiffens our resolve not to reach an issue unnecessary to the disposition of the case before us.

## D.    Invited Error

¶ 52    Qwest separately contends that, even if we conclude that it isn't entitled to benefit from CRUS, we should nevertheless affirm the district court's order on the grounds that the Kritzers invited any error by advancing contradictory theories regarding the extent of Qwest's interest in and control over the sidewalk panel where the accident occurred.  According to Qwest, throughout this litigation (including through the first appeal), it has been the Kritzers' position that Qwest "owns and maintains" the sidewalk at issue and has made "express or implied representation that the public is requested, expected, or intended to enter or remain."[1]  Because the Kritzers asserted contradictory theories, Qwest argues, either the six-year statute of repose in CDARA or CRUS bars their claims.  We reject this contention.

---

[1] The latter quote comes from the Kritzers' complaint where they allege that "Stuart Kritzer entered the sidewalk in response to the express and implied representation that it was intended for the use of the public."  The Kritzers made this allegation to support their contention that Stuart Kritzer was an invitee under the PLA at the time of the accident.  *See* § 13-21-115(7)(a), C.R.S. 2024.  Importantly, for the purpose of this argument advanced by Qwest, however, the Kritzers don't aver that it was *Qwest* that did the inviting or made the representations.  This further highlights the analytical distinction between CRUS and the PLA.

24

¶ 53    When this case was first remanded to the district court in 2021, this court instructed the district court to make further findings on whether an exception to the CDARA statute of repose applied. *Kritzer I*, No. 20CA0025, slip op. at ¶ 54. The district court has yet to make those findings. And we're not going to do so here. We're not persuaded that the positions taken by the Kritzers up to the time that Qwest asserted immunity under CRUS are inconsistent with the grounds on which we are reversing the district court's grant of summary judgment such that the court's error was invited or that our disposition of this appeal dictates the outcome of unresolved issues previously remanded and still pending.

¶ 54    As alluded to in Part III.C.2 above, the applicability of the PLA is analytically independent of the applicability of CRUS. The same is true for the applicability of the statute of repose under CDARA. On remand, the district court may make further findings consistent with the instructions provided in *Kritzer I*, No. 20CA0025, slip op. at ¶¶ 54, 57.

## IV.  Other Issues

¶ 55    Because we conclude that the district court erred by granting summary judgment on the grounds that Qwest was entitled to

immunity pursuant to CRUS, we don't reach the Kritzers' alternative contentions that (1) the CDOT permit imposed an independent legal duty on Qwest to maintain and repair the sidewalk panel, and this duty isn't extinguished by CRUS; and (2) summary judgment was improper because there are disputed issues of material fact regarding whether the willful or malicious exception to CRUS, § 33-41-104(1)(a), applies. We offer no opinion with respect to these issues.

## V.   Attorney Fees and Costs

¶ 56     Qwest requests attorney fees and costs pursuant to section 33-41-105.5, C.R.S. 2024, C.A.R. 39, and C.A.R. 39.1. Because Qwest didn't prevail on appeal, it isn't entitled to its attorney fees incurred on appeal. Accordingly, we deny the request.

## VI.   Disposition

¶ 57     The judgment is reversed, and the case is remanded to the district court for further proceedings.

JUDGE KUHN and JUDGE SCHUTZ concur.